# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA

111 North Adams Street | Tallahassee, Florida 32301

BOBBY SHED,

      Pro Se Plaintiff,

vs.

CASE NO.: 4:22cv 00100-AW/ MJF

UNIVERSITY OF SOUTH FLORIDA BOARD OF TRUSTEES,

Provost Dwayne Smith,

Attorney Camille Blake,

Ms. Deborah McCarthy,

Dean Moez Limayem,

Dean Jaqueline Reck,

Professor Jianping Qi,

Professor Ninon Sutton,

Professor Murat Munkin, and

FLORIDA COMMISSION ON HUMAN RELATIONS,

      Defendants.

---

*"Now they [police] just give you citations.  Who Cares? It's Nothing…At Least Nobody Is Raping Anyone [Black Women] Anymore…" (USF Econometrics Professor Murat Munkin, Fall 2019…Audio Linked Below).*

---

## Complaint and Demand for Jury Trial



FILED USDC FLND TL
MAR 7 '22 PM 4:42

Plaintiff, BOBBY SHED (hereinafter as "Plaintiff" or "Shed") hereby sues the Defendants, UNIVERSITY OF SOUTH FLORIDA BOARD OF TRUSTEES (hereinafter as "USF" or "Defendant"), Provost Dwayne Smith, Attorney Camille Blake, Ms. Deborah McCarthy, Dean Moez Limayem, Dean Jaqueline Reck, Professor Jianping Qi, Professor Ninon Sutton, Professor Murat Munkin, and FLORIDA COMMISSION ON HUMAN RELATIONS (hereinafter as "FCHR or"), and alleges as follows:

## Introduction

01.)    Plaintiff was a Ph.D. student in the Finance Department at USF and a graduate assistant at USF from 2017 to 2019.  On or around 23-June-2018, Plaintiff was stopped and harassed by USF police while placing legal boxes in his office.  Plaintiff collected and analyzed data from the Hillsborough County Clerk office which provided evidence that the Plaintiff's harassment was not an isolated incident.  USF police engaged in a pattern and practice of discrimination.  The data revealed that USF police issued citations to Black people at a rate nearly 300% more than their representation on campus and nearly 200% more than their representation in the surrounding Hillsborough County.  The data also revealed that USF police issued criminal citations (as opposed to the lesser civil citations) to Black people in excess of 44% of their expected frequency within the population.  Moreover, Plaintiff documented that other law enforcement agencies in Hillsborough County (not USF) often changed the race of individuals in the data it releases to the public.  For example, Plaintiff who at all times self-identifies as a Black American male and visually appears to be a Black American male is listed as White in traffic citation data from Hillsborough County Sheriff's Office.

[Please see raw data and analyses linked here:
https://www.dropbox.com/sh/24ngw9ogolx9o55/AADyguMKIXxS7Yg4ctoiNjGRa?dl=0].

2

Subsequent to reporting, USF engaged in retaliation, intimidation, and discrimination against Plaintiff, which Plaintiff also reported.  Retaliation, intimidation, and discrimination were wrought in the following areas funding, medical insurance, public records requests, approved health accommodations, and job-reassignment.  Plaintiff's funding was withheld, delayed, and/or decreased; Plaintiff's medical insurance was withheld; requested records related to Plaintiff's claim of retaliation were obstructed and/or altered; Plaintiff was penalized for using approved academic accommodations and/or accommodations were withheld; and Plaintiff's job was re-assigned to an unreasonably laborious and lesser role than.  Defendants routinely denied Plaintiff due process in dismissal proceedings and appeals.  Defendants' retaliation, discrimination, intimidation, and denial of due process culminated in Plaintiff's dismissal and the loss of other financial grants, monetary fellowships, scholarly associations, future earnings, along with other privileges and benefits enjoyed by holders of a Ph.D. in Finance.

Additionally, Defendants lied to federal authorities investigating Plaintiff's complaint and withheld pertinent information from federal authorities such as the data Plaintiff provided to Defendants documenting a pattern and practice of abuses and additional complaints submitted by Plaintiff.  Defendants produced false and misleading information regarding Plaintiff's complaint and knowingly provided these reports to federal authorities, even after Plaintiff notified Defendants.

Approximately five months prior to dismissal, Plaintiff received a glowing evaluation which stated that he "is progressing in the Ph.D. program", is a "pleasant student who adheres to high ethical standards", "exhibits strong interest and enthusiasm about his research topics", and will graduate earlier than the time allotted for the program. [Please see Exhibit 01 — Evaluation].

All retaliatory acts occurred within 6-months of the Plaintiff's initial complaint and/or subsequent complaints such that the acts satisfy the legal standard for temporal proximity.

3

Please note that while police were involved in the precipitating incident, this is not a case against police. Plaintiff has family members who work in law enforcement and who were hurt in the line of duty. Plaintiff holds those who serve honorably in high esteem.

This is a case about how public entities use the weight of their influence, the reach of their network, and depth of the financial might—which largely comes from the public's purse—to act as institutional-Karens by qualifying racism, covering racists, wielding their law enforcement agency against Black bodies, denying due process to Black persons, and annihilating those who engage in the Constitutionally-protected act of documenting complaints. Legally, this is a case of retaliation, intimidation, discrimination, denial of due process, and negligence/dereliction of duty to enforce Civil Right protection while endowed with the authority to do so.

### Jurisdiction and Venue

02.)     This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

03.)     Venue lies within the United States District Court for the Northern District of Florida, Tallahassee Division because a substantial part of the events giving rise to this claim occurred in this Judicial District and is therefore proper pursuant to 28 U.S.C. 1391(b).

### Parties

04.)     At all times material herein, Plaintiff, BOBBY SHED, was and is a resident of Florida.

05.)     At all times material herein, Defendant, UNIVERSITY OF SOUTH FLORIDA BOARD OF TRUSTEES, was and is a state university. The school's Board of Trustees is

the legal entity with the power to sue or be sued in the school's name. *See Fla. Stat 1001.72.*

06.)     At all times material herein, Defendant, UNIVERSITY OF SOUTH FLORIDA BOARD OF TRUSTEES, was an employer as defined by the laws under which this action is brought and employs the required number of employees.

07.)     At all times material herein, Defendants: Provost Dwayne **Smith**, Attorney Camille Blake, Ms. Deborah McCarthy, Dean Moez Lima**yem**, Dean Jaqueline Reck, Professor Jianping Qi, Professor Ninon Sutton, Professor Murat Munkin were employed by USF.

08.)     At all times material herein, Defendant, FLORIDA COMMISSION ON HUMAN RELATIONS, was and is a state agency in Leon County, Tallahassee, Florida.

## General Allegations

09.)     At all times material, Defendant, UNIVERSITY OF SOUTH FLORIDA BOARD OF TRUSTEES, acted with malice and with reckless disregard for Plaintiff's Federal and State protected rights.

10.)     At all times material, Defendants: Provost Dwayne Smith, Attorney Camille Blake, Ms. Deborah McCarthy, Dean Moez Limayem, Dean Jaqueline Reck, Professor Jianping Qi, Professor Ninon Sutton, and Professor Murat Munkin acted with malice and with reckless disregard for Plaintiff's Federal and State protected rights.

11.)     At all times material, Defendant, FCHR, acted with malice and with reckless disregard for Plaintiff's Federal and State protected rights.

12.)    At all times material, Plaintiff was qualified to perform his job duties and participate in his Ph.D. program with reasonable accommodations.

13.)    Plaintiff requests a jury trial for all issues so triable.

## Administrative Prerequisites and Conditions Precedent

14.)    Plaintiff filed a Discrimination, Retaliation, and Whistleblower complaint with Florida Commission on Human Rights and Substantial Weight Review with the Equal Employment Opportunity Commission (hereinafter EEOC) for the retaliatory and discriminatory acts related to employment.  A Notice of Rights was issued by EEOC and received by Plaintiff thereafter.  This Complaint has been filed within 90 days of Plaintiff's receipt of EEOC's Notice of Rights.

Please note many acts herein are not exclusively related to employment and therefore do not require Conditions Precedent and/or are not time-barred by Administrative Prerequisites attributed to FCHR and/or EEOC.

## Factual Allegations Common to All Counts

15.)    On or around 23-June- 2018 Plaintiff filed a public records request with USF General Counsel Office for footage related to police harassment.  Defendant USF altered public records request after Plaintiff submitted it.  Moreover, the footage provided in response to Plaintiff's public records request was altered such that it did not start from the beginning of the incident, it had heavy metal music playing so loudly that one could not hear USF police dialogue with Plaintiff and with each other, and/or the footage suddenly became blurry around key events.  Plaintiff complained about the tampered request and altered footage.  Plaintiff requested correction.

6

16.)    On or around 10-August-2018 Plaintiff documented a complaint with USF Office for Diversity Inclusion and Equal Opportunity (hereinafter DIE-O), USF Human Resources, and USF Compliance Officer regarding the harassment and racial discrimination by USF police as well as the tampered public records request and altered footage.

17.)    When the Fall 2018 semester commenced on or around 20-August-2018, Plaintiff's funding was not available.  Plaintiff received notice that his registration would be dropped from USF for non-payment.  Please note Defendant had processed Plaintiff's funding previously.  Additionally, USF neglected to pay its portion of Plaintiff's health insurance.  Please note that USF had previously paid and processed Plaintiff's health insurance.

18.)    On or around 11-January-2019, Plaintiff met with Dean Moez Limayem (Dean of Muma College of Business), Associate Dean Jacqueline Reck (Associate Dean of Muma College of Business), Professor Jianping Qi (Chair of USF Finance Department), and Professor Ninon Sutton (Head of USF Ph.D. Finance Program) regarding the university police harassment, tampered footage, and Plaintiff's delayed/decreased funding subsequent to complaining.  The university staff and faculty in the 11-January-2019 meeting acknowledged Plaintiff's funding was withheld, delayed, and decreased subsequent to complaining.  Defendants insisted the withholding, delay, and decrease were not acts of retaliation but an "unfortunate sequence of events".  Dean Moez Limayem also informed the attendees that there abounds a duty to report these matters. [Please see Exhibit 02—Transcript from meeting with audio linked].  Please further note the recording here are legally due to Plaintiff's Whistleblower complaint.

19.)    On or around 08-July-2019 Plaintiff learned that USF neglected to send documentation required for funding.  Through public records request, Plaintiff acquired the original email in a form appropriate for technical analysis (for example: .eml format or .msg format).  USF's own technician confirmed that the funding

document was sent to the other funding recipients (according to traceable logs) except Plaintiff. Plaintiff reported the continued interference with funding to Graduate Dean's Office. Please note Plaintiff received the funding document at the same time as other recipients prior to documenting complaints.

20.)   On or around 20-August-2019 USF produced a falsified financial report regarding Plaintiff's funding that misrepresented when Plaintiff received funding and the amount of funding Plaintiff received. The altered financial document was sent to Plaintiff by Dean Jacqueline Reck. [Please see Exhibit 03 — Budget Narrative]. The intent was to cover-up the retaliation. Plaintiff refused to accept the altered financial report. Please note the attendees of the 11-January-2019 meeting had already acknowledged Plaintiff's funding was withheld, decreased, and delayed as an "unfortunate sequence of events." [Please revisit Exhibit 02 — Transcript from meeting with audio linked]. Additional records from USF Financial Aid substantiate that the amounts and dates of funding in the falsified financial report are indeed false.

21.)   On or around 21-August-2019 Plaintiff job was re-assigned from a Research Assistant (RA) to a grader (Teaching Assistant, TA) to a professor with "high cap" classes in which Plaintiff received an unreasonable amount of work that exceeded his contracted 8.64 hours per week. [Please see Exhibit 04A and Exhibit 04B — Emails confirming Plaintiff's job role as a RA then changing Plaintiff's job role to a TA for a professor with "high cap classes"]. [Please see Exhibit 05 — Transcripts in which Professor Scott Besley state that it would take him "weeks" to grade the work he assigned to Plaintiff who was only contracted for 8.64 hours per week].

USF policy states that any person who handles student data whether a TA or grader, must undergo mandatory training. [Please see Exhibit 06 — USF Policy]. Plaintiff requested this training for the new job role. Defendants withheld training and Plaintiff was given access to students' grades and data in USF learning platform. [Please see Exhibit 07 — Email inquiring about required training for job re-assignment]. [Please see

Exhibit 08 — Transcripts in which Professor Scott Besley acknowledges that Plaintiff will be granted TA-level access to student data against USF policy].

22.)    On or around 01-September-2019, Plaintiff formally reported policing data along with additional retaliation and cover-up to USF officials. [Please note Plaintiff had shared some of the data with another professor earlier in the year along data documenting how police were altering the race of individuals in the data it released to the public.] Soon thereafter, Plaintiff discussed the data with Professor Murat Munkin who made a litany of racist and discriminatory statements including who cares that the police gives Black people citations, at least nobody rapes Black women, Black men are better at basketball, Black men can indicate that they are troublemakers by their hair, Black men can indicate that they are troublemakers by their style of dress, Muslim women deserve partial treatment when traveling in the airport because some Muslims are crazy, etc. [Please see Exhibit 09 — transcript].

23.)    Throughout part of Summer 2019 and most of Fall 2019 USF failed to process Plaintiff's medical insurance such that Plaintiff had to go without desired access to healthcare for an extended period. Please note that Defendant had approved accommodations for Plaintiff and was aware that Plaintiff required full access to healthcare. Please note Defendant had properly processed Plaintiff's healthcare prior to Plaintiff documenting complaints.

24.)    Throughout Fall 2019 USF denied Plaintiff's approved accommodations.

On or around 02-December-2019 Professor Murat Munkin sent an email to Plaintiff, Ms. Deborah McCarthy (Head of USF Office of Student Disability Services [hereinafter SDS]) stating the Plaintiff must take the final exam in Econometrics II on the morning scheduled for the class or receive a more difficult final exam by nature of making the make-up final exam cumulative. Please note that USF SDS had approved the accommodations for Plaintiff receive flexibility with deadlines including scheduling

and/or re-schedule exams as needed.  Professor Murat Munkin's directive provided a
punishment for Plaintiff accessing an approved accommodation.  USF permitted it.
This is akin to telling a wheelchair bound person to use the stairs like everyone else or
USF will create a ramp made of glass and nails for the wheelchair bound person to use;
and then declare that equal access and equal opportunity. [Please see Exhibit 10—
Email].

USF consistently created obstacles to Plaintiff accessing accommodations,
delayed/denied/withheld accommodations, and/or creating consequences for Plaintiff
accessing accommodations subsequent to Plaintiff complaining of injustices at USF.
Through a public records request, Plaintiff obtain all the syllabi for Econometrics II
taught by Professor Murat Munkin at USF since 2009. [Please see Exhibit 11—Syllabi].
Please note the syllabi never prohibited make-up assessment, nor placed attendance
restrictions until Fall 2019 when Plaintiff took the course for credit and requested
reasonable accommodations.   Professor Murat Munkin acknowledged that he had
always given Ph.D. students a passing grade in his Econometrics II course prior to Fall
2019 when Plaintiff took the course for credit. [Please see Exhibit 12—Transcript with
linked audio].  Professor Murat Munkin acknowledged that he changed his syllabus
because of Plaintiff. [Please see Exhibit 13—Transcript with linked audio].

25.)    On or around 27-December-2019 Plaintiff received a letter of dismissal via postal
mail. On or around 24-January-2020 Provost Dwayne Smith wrote to Dean Jacqueline
Reck, Dean Ruth Bahr, and others that Plaintiff's period to challenge the dismissal
expired on 23-January-2020 and the dismissal is final.  Please note USF policy defines
the period to appeal as days when USF is open for business and delivering academic
services, excluding holidays.  USF truncated Plaintiff's appeal period; thereby, denying
Plaintiff due process.  Defendants neglected to rectify this when Plaintiff informed
them.

26.)     On or around 06-March-2020 Plaintiff submitted a Whistleblower Report and Grievance to USF DIE-O.  On a phone call that transpired on or around 13-March-2020 Attorney Camille Blake of USF DIE-O refused to acknowledge receipt of Plaintiff's complaints.  On or around 01-April-2020 USF DIE-O Attorney Camille Blake sent Plaintiff an email documenting that she had deleted Plaintiff's complaint which documented falsified financial records from USF and reported USF policing data.

Through a public records request, NAACP acquired data that documents disparate impact in USF DIE-O's handling of complaints.  A preliminary analysis of the data which USF provided to NAACP reveals that out of 239 equity complaints handled by USF DIE-O from 2011 until 2020, only 1 complaint involving a Black complainant and White respondent was sustained.

One singular sustained complaint across 239 complaints within a decade is not statistically different than zero within the data and provides initial evidence to support the *"Inexorable Zero":* and hence a pattern and practice of institutional discrimination.

*Inexorable Zero* has been used to determine racial discrimination in legal matters. [Please see Supreme Court Case: International Brotherhood of Teamsters vs. U.S.]. Contextually, it is reasonable to assume that students do not matriculate into university to file complaints with DIE-O.  Those who do, have been seriously aggrieved. Therefore, a reasonable number of complaints should be sustained assuming the investigator is a neutral fact finder, and the investigative process is unbiased.  A number of sustain complaints that fails to be statistically different than 0 within the data would posit structural, institutional, and systemic discrimination within the complaint process.  Please be mindful that the data does not include instances like the Plaintiff's wherein USF DIE-O Attorney Camille Blake deleted Plaintiff's complaint and refused to acknowledge receipt of Plaintiff's complaint in a phone conversation prior to deleting the complaint.

11

27.)    On or around 06-March-2020 Plaintiff submitted a Whistleblower Report and Grievance to FCHR.  FCHR produced a report of investigative finding with fictitious characters and gross misrepresentations of Plaintiff's complaint.  When Plaintiff informed FCHR of gross misrepresentations in their report; FCHR neglected to correct its report containing fictitious characters and gross misrepresentations.  FCHR knowingly delivered a tainted report to federal agents investigating Plaintiff's complaint.

28.)    On or around 06-March-2020 Plaintiff submitted a Whistleblower Report and Grievance to the United States Department of Education Office of Civil Rights (OCR).  OCR Attorney Michael Bennett informed Plaintiff that USF provided statements regarding my complaint.  The statements USF provided to the federal agency were factual inaccurate and intentionally deceptive.

29.)    On or around 06-March-2020 Plaintiff submitted a Whistleblower Report and Grievance to the National Association for the Advancement of Colored People (NAACP) Hillsborough.  USF's current President, USF DIE-O, and USF Vice President provided misleading statements to NAACP including, but not limited to, reports that one of the officers who initiated Plaintiff's harassment was disciplined.  [Please see Exhibit 14—Internal Investigations report exonerating the Officer; and Evaluations in which the Officer received excellent reviews each year thereafter].

30.)    Many documented incidents illuminate a pattern and practice of discrimination, retaliation, and other abuses at USF.  Please consider the following, non-exhaustive list.

     A.)    USF Police acknowledges association with Ku Klux Klan (KKK).   [Please see Exhibit 15—News Article].

     B.)    Trina Michelle Reddick vs. USF (2020): A Black female employee experienced retaliation, discrimination, and found a noose hanging in her office after she refused to falsify data in USF policing reports intended for public release.

C.)    Benjamin Thomas vs. USF (2019): A Black male, and U.S. veteran is denied reasonable accommodations at USF.  USF weaponize police against Thomas subsequent to complaining.

D.)    Fai Howard vs. USF (2021): A Black female employed by USF as Assistant Dean documents how USF engage in pay discrimination along the lines of race and gender in even when candidates have terminal degrees, commensurate experience, and similar job functions.

E.)    USF basketball stars transfer from USF citing racism (2021). [Please see Exhibit 16--News Article].

F.)    Norma Bedell vs. USF (2022):  Hispanic female working in administration was retaliated against by USF and terminated by USF for corroborating the racial discrimination claims of a colleague during an investigation of discrimination at USF.

G.)    USF Diversity Committee all resign in unison (2020) citing that USF administration do not care to address racism and pressing concerns of minorities at USF. [Please see Exhibit 17--News Article].

H.)    USF students and staff complain of racism at USF (2020).  [Please see Exhibit 18--News Article].

I.)    Angela Debose vs. USF:  Black female registrar documents discrimination, retaliation, and was physically removed from USF by police after documenting complaints.  [Please see Exhibit 19—Excerpt from Debose vs. USF in which "*Inexorable Zero*" is used to document racial discrimination in USF hiring and promotion practices].

J.)    Samantha Garret vs. USF (2018):  USF forced rape survivor to take classes with her victimizer and attempted to perform a forensic scan of the survivor's computer as if she had not been sufficiently victimized already.

K.)    USF misuses millions of dollars in state funds (2018).  [Please see Exhibit 20—News Article].

L.)     Paul A Guyton vs. USF: A Black male document how he was beaten by USF police and intentionally hit by USF police patrol cars while riding his bike on USF campus.

M.)     State of Florida, ex rel. Darren Rubin vs. USF: Documents how USF defrauded the government by falsifying grants and research/patent data.

**Count I**

**42 U.S.C §1981 – Retaliation**

31.)     Plaintiff realleges and adopts the allegations stated in items 1 – 30, as if set out in full hereafter.

32.)     Plaintiff is a Black male and member of a protected class under 42 U.S.C. § 1981.

33.)     By the conduct described above, Defendants engaged in unlawful practices and discriminated against Plaintiff on account of race in violation of 42 U.S.C. § 1981, for which Defendants are liable.

34.) Defendants knew or should have known, of the discrimination.

35.) As a result of Defendants' unlawful discrimination, Plaintiff has suffered and continues to suffer the following damages:

  a) Back pay and benefits;

  b) Interest on back pay and benefits;

  c) Front pay and benefits;

  d) Compensatory damages;

  e) Punitive damages;

  f) Injunctive relief; and

  g) Any other relief this Court deems just and equitable.

Wherefore Plaintiff demands a trial by jury and judgment against Defendants for damages as described above, and for such other and further relief to which Plaintiff may be justly entitled.

**Count II**

**Title VII – Retaliation**

36.) Plaintiff realleges and adopts the allegations stated in paragraphs 1 – 30, as if set out in full hereafter.

37.)   Plaintiff suffered an adverse retaliatory action.

38.) The above-described acts of retaliation constitute a violation of Plaintiff's Constitutional rights. Defendants knew or should have known, of the discrimination.  As a result of Defendants' unlawful discrimination, Plaintiff has suffered and continues to suffer the following damages:

a)  Back pay and benefits;

b)  Interest on back pay and benefits;

c)  Front pay and benefits;

d)  Compensatory damages;

e)  Punitive damages;

f)  Injunctive relief; and

g)  Any other relief this Court deems just and equitable.

**Count III Disability Discrimination – ADA**
**Violation of Americans with Disabilities Act, as Amended 42 U.S.C.**

39.)   Plaintiff incorporates by reference the allegations of items 1 through 30, as though actually set forth in this Count.

40.)   Defendants regarded Plaintiff as having a disability by taking an action prohibited by the Americans with Disabilities Act because of Plaintiff's health impairment and/or need for accommodation of that impairment.

41.)   As a direct and proximate result of these acts, Plaintiff has suffered and continues to suffer damages.

42.)   The actions of Defendants, through its representatives, employees, and agents, were malicious, intentional and constitute a wanton, willful and reckless disregard by USF of Plaintiff's protected employment rights.

Wherefore Plaintiff respectfully requests that this Court grant him the following relief:

a) A declaration that Defendants violated the ADA;

b) An injunction against USF, prohibiting further violations of **the** ADA;

c) Award Plaintiff back pay and front pay in the form of lost **wages**, including lost fringe benefits, which resulted from the illegal discrimina**tion;**

d) Award Plaintiff compensatory damages including, but not li**mit**ed to those for loss of dignity, and any other intangible injuries;

e) Injunctive relief;

f) Punitive damages;

g) The costs of this action, pre-judgment interest; and

h) Such other and further relief as is just, equitable, and proper.

## Count IV – ADA Title V
## Violation of Americans with Disabilities Act, Title V

43.) Title V of the ADA prohibits any entity from coercing, inti**mida**ting, threatening, or interfering with an individual's exercise or enjoyment of a right gr**a**nted by the ADA.

44.) Plaintiff incorporates by reference the allegations of items 1 **thr**ough 30, as though actually set forth in this Count.

45.) Defendants regarded Plaintiff as having a disability by tak**ing** an action prohibited by the Americans with Disabilities Act because of Plaintiff's health impairment and/or need for accommodation of that impairment.

46.) As a direct and proximate result of these acts, Plaintiff has suffered and continues to suffer damages.

47.) The actions of Defendants, through its representatives, employees, and agents, were malicious, intentional and constitute a wanton, willful and reckless disregard by USF of Plaintiff's protected employment rights.

Wherefore Plaintiff respectfully requests that this Court grant him **the** following relief:

a) A declaration that Defendants violated the Title V of ADA;

b) An injunction against USF, prohibiting further violations of **the** Title V of ADA;

c) Award Plaintiff back pay and front pay in the form of lost **wages**, including lost fringe benefits, which resulted from the illegal discrimination;

d) Award Plaintiff compensatory damages including, but not limited to those for loss of dignity, and any other intangible injuries;

e) Injunctive relief;

f) Punitive damages;

g) The costs of this action, pre-judgment interest; and

h) Such other and further relief as is just, equitable, and proper.

## Count V
## Section 1 (42 USC § 1983)

48.)   Section 1 of the 1983 Civil Rights Acts provides recourse against individuals who violate the civil rights another.

49.)   Plaintiff incorporates by reference the allegations of items 1 through 30, as though actually set forth in this Count.

50.)   Defendants regarded Plaintiff as a member of a protected class and knowingly violated his civil rights.

51.)   As a direct and proximate result of these acts, Plaintiff has suffered and continues to suffer damages.

52.)   The actions of Defendants, through its representatives, employees, and agents, were malicious, intentional and constitute a wanton, willful and reckless disregard of Plaintiff's protected civil rights.

Wherefore Plaintiff respectfully requests that this Court grant him the following relief:

a) A declaration that Defendants violated Section 1 of the 1983 Civil Rights Act

b) An injunction against Defendants, prohibiting further violations of Section 1 of the 1983 Civil Rights Act;

c) Award Plaintiff back pay and front pay in the form of lost **wages**, including lost fringe benefits, which resulted from the illegal violation of civil rights;

d) Award Plaintiff compensatory damages including, but not limited to those for loss of dignity, and any other intangible injuries;

e) Injunctive relief;

f) Punitive damages;

g) The costs of this action, pre-judgment interest; and

h) Such other and further relief as is just, equitable, and proper.

## Count VI
## Section 2 (42 U.S.C §1985)

53.)    Section 2 of the 1985 Civil Rights Acts (also called the "Ku Klux Klan" clause) provides recourse against two or more individual who cooperate to violate the civil rights another.

54.)    Plaintiff incorporates by reference the allegations of items 1 through 30, as though actually set forth in this Count.

55.)    Defendants regarded Plaintiff as a member of a member of a protected class and knowingly violated his civil rights.

56.)    As a direct and proximate result of these acts, Plaintiff has suffered and continues to suffer damages.

57.)    The actions of Defendants, through its representatives, employees, and agents, were malicious, intentional and constitute a wanton, willful and reckless disregard of Plaintiff's protected civil rights.

Wherefore Plaintiff respectfully requests that this Court grant him the following relief:

a) A declaration that Defendants violated Section 2 of the 1985 Civil Rights Act;

b) An injunction against Defendants, prohibiting further violations of Section 2 of the 1985 Civil Rights Act;

c) Award Plaintiff back pay and front pay in the form of lost wages, including lost fringe benefits, which resulted from the illegal violations of civil rights;

d) Award Plaintiff compensatory damages including, but not limited to those for loss of dignity, and any other intangible injuries;

e) Injunctive relief;

f)  Punitive damages;

g)  The costs of this action, pre-judgment interest; and

h)  Such other and further relief as is just, equitable, and proper.

**Count VII**

**Section 6 (42 USC § 1986) — Failure to Use Authority to Prevent Violations of Civil Rights Acts**

58.)   Section 6 of the 1986 Civil Rights Acts provides recourse against individuals who fail to prevent violations of civil rights.

49.)   Plaintiff incorporates by reference the allegations of items 1 through 30, as though actually set forth in this Count.

60.)   Defendants regarded Plaintiff as a member of a protected class and knowingly violated his civil rights.

61.)   As a direct and proximate result of these acts, Plaintiff has suffered and continues to suffer damages.

62.)   The actions of Defendants, through its representatives, employees, and agents, were malicious, intentional and constitute a wanton, willful and reckless disregard of Plaintiff's protected civil rights.

Wherefore Plaintiff respectfully requests that this Court grant him the following relief:

a)  A declaration that Defendants violated Section 6 of the 1986 Civil Rights Act;

b)  An injunction against Defendants, prohibiting further violations of Section 6 of the 1986 Civil Rights Act;

c)  Award Plaintiff back pay and front pay in the form of lost wages, including lost fringe benefits, which resulted from the illegal violations of civil rights;

d)  Award Plaintiff compensatory damages including, but not limited to those for loss of dignity, and any other intangible injuries;

e)  Injunctive relief;

f)  Punitive damages;

g) The costs of this action, pre-judgment interest; and

h) Such other and further relief as is just, equitable, and proper.

I affirm that the statements herein are true to the best of my knowledge.

Dated: Monday, 07-March-2022

By: _____

Bobby Shed

5004 East Fowler Avenue Unit C-102

Tampa, FL 33617

Phone: (386)235-0133

Fax: 888-310-3591

Email: ShedBobby@GMail.com with copy to BobbyShed@PM.ME