UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

BOBBY SHED,

    Plaintiff,

v.                                                                  Case No. 4:22-cv-100-AW-MJF

UNIVERSITY OF SOUTH FLORIDA
BOARD OF TRUSTEES, *et al.*,

    Defendants.

_____/

## ORDER

The Middle District of Florida is the most appropriate venue for this employment-discrimination case. Indeed, this case has little or no relationship to the Northern District of Florida. The undersigned, therefore, will direct the clerk of the court to transfer this case to the Middle District of Florida.

### I. BACKGROUND

The background set forth below is sometimes vague and ambiguous because Plaintiff's complaint oftentimes is vague and ambiguous. Plaintiff's complaint is a so-called "shotgun" pleading that suffers from various defects, such as the inclusion of extraneous information unconnected to his claims. *See Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (noting that a so-called "shotgun pleading" includes a "complaint that violates Federal Rules of Civil Procedure 8(a)(2) or 10(b), or both").

According to Plaintiff's complaint, from 2017 through 2019, Plaintiff was a student and graduate assistant at the University of South Florida ("USF"). Doc. 1 ¶ 1. The USF is located in Hillsborough County, Florida. Hillsborough County is part of the Middle District of Florida.

On June 23, 2018, while Plaintiff was on the USF campus, the USF police stopped Plaintiff. *Id.* ¶ 15. Plaintiff later filed a public records request with the USF general counsel to obtain the video footage of the stop. The USF general counsel provided Plaintiff with video footage. Plaintiff alleges that the video footage was altered insofar as it contained background music and "key events" depicted in the recording were "blurry." *Id.*

On August 10, 2018, Plaintiff filed a complaint regarding the footage and alleged harassment by a USF police officer. *Id* ¶ 16. Plaintiff filed the complaint with the USF's Office for Diversity Inclusion and Equal Opportunity ("DIE-O"), the USF's Human Resources Office, and the USF's Compliance Officer.

On August 20, 2018, Plaintiff's "funding was not available."[1] *Id.* ¶ 17. The USF informed Plaintiff that his registration would be "dropped" for "non-payment." Doc. 1 ¶ 17. The USF also purportedly did not pay a portion of Plaintiff's health

---

[1] It appears that Plaintiff is referring to a stipend that he received while he participated in the Health Policy Research Scholars Program. Doc. 1-1 at 20.

insurance despite doing so in the past. *Id.* Although not explicit in Plaintiff's complaint, it appears that Plaintiff eventually resolved these issues. *Id.* ¶ 23.

On January 11, 2019, Plaintiff met with USF faculty members—Dean Moez Limayem, Associate Dean Jacqueline Reck, Professor Jianping Qi, and Professor Ninon Sutton—regarding the alleged police harassment, the video footage, and the delay in Plaintiff's funding. *Id.* ¶ 18. During the meeting, Defendants purportedly acknowledged a delay in the funding. *Id.*

On July 8, 2019, Plaintiff discovered that the USF did not send documentation required for his funding.[2] Doc. 1 ¶ 19. After Plaintiff raised this issue to the graduate dean's office, on August 20, 2019, Associate Dean Jacqueline Reck provided Plaintiff with a financial report that indicated when Plaintiff received funding and the amount he received. Plaintiff asserts that the financial report contained false information *Id.* ¶ 20.

On August 21, 2019, Plaintiff ceased being a research assistant and instead became a teaching assistant. *Id.* ¶ 21. Plaintiff asserts that this change resulted in "an unreasonable amount of work that exceeded his contracted 8.64 hours per week." *Id.*

On September 1, 2019, Plaintiff filed a formal report regarding retaliation by USF officials. Doc. 1 ¶ 22. Shortly thereafter, Professor Murrat Munkin and Plaintiff

---

[2] Plaintiff's complaint does not indicate whether this was a continued failure to process his financial aid request or a second incident of the same nature.

were discussing data that Plaintiff had collected regarding USF policing incidents. Professor Munkin purportedly began making discriminatory comments regarding minorities. *Id.*

On December 2, 2019, Munkin allegedly denied Plaintiff's approved academic accommodations insofar as Munkin required Plaintiff to "take the final exam in Econometrics II on the morning scheduled for class or receive a more difficult [cumulative] make up final exam." *Id.* ¶ 24; Doc. 1-1 at 46.

On December 27, 2019, Plaintiff received a letter of dismissal. On January 24, 2020, Provost Dwayne Smith wrote to Assistant Dean Jacqueline Reck and Dean Ruth Bahr that Plaintiff's opportunity to challenge the dismissal expired on January 23, 2020, and that the dismissal was final. Doc. 1 ¶ 25. Plaintiff asserts that the USF attenuated the appeal period in violation of the Fourteenth Amendment to the United States Constitution.

On March 6, 2020, Plaintiff submitted several whistleblower reports and grievances to various officials. First, he submitted a whistleblower report and grievance to the USF DIE-O. Attorney Camille Blake, an employee of the USF's DIE-O, refused to acknowledge receipt of Plaintiff's complaint. Later, she sent Plaintiff an email documenting that she had deleted Plaintiff's complaint. *Id.* ¶ 26.

Plaintiff also submitted a whistleblower report and grievance to the Florida Commission on Human Relations ("FCHR"). The FCHR issued a report, which

Plaintiff asserts contained "fictious characters" and "gross misrepresentations." *Id.* ¶ 27. Additionally, Plaintiff submitted a whistleblower report and grievances to the United States Department of Education Office of Civil Rights ("OCR") and the National Association for the Advancement of Colored People ("NAACP"). Plaintiff alleges that the USF officials provided both the OCR and NAACP false and misleading information.

On March 7, 2022, Plaintiff, proceeding *pro se*, commenced this action against ten Defendants: (1) USF Board of Trustees; (2) Dwayne Smith, Provost of USF; (3) USF Attorney Camille Blake; (4) Deborah McCarthy, Head of USF's Office of Student Disability Services; (5) Dean Moez Limayem; (6) Dean Jaquelin Reck; (7) Professor Jianping Qi; (8) Professor Ninon Sutton; (9) Professor Murat Munkin; and (10) the FCHR.

Plaintiff asserts the following claims:

- Count I: "42 U.S.C. § 1981 – Retaliation"
- Count II: "Title VII – Retaliation";
- County III: "Disability Discrimination – ADA Violation of Americans with Disabilities Act, as Amended 42 U.S.C.";
- Court IV: "ADA Title V Violation of Americans with Disabilities Act, Title V";
- Count V: "Section 1 (42 USC § 1983)";

- Count VI: "Section 2 (42 U.S.C. §1985)"; and

- Count VII: "Section 6 (42 USC § 1986) – Failure to Use Authority to Prevent Violations of Civil Rights Acts."

Doc. 1 at 14-19 (errors in original).

## II. DISCUSSION

Venue in civil actions generally is governed by section 1391 of Title 28 of the United States Code. But that provision specifically states that it applies unless "otherwise provided by law." Title VII has its own venue provision. It provides:

> [An action brought pursuant to Title VII] may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice.

42 U.S.C. § 2000e-5(f)(3). Title VII's venue provision was "intended to be the exclusive provisions for Title VII employment-discrimination actions and that the more general provisions of § 1391 are not controlling in such cases." *Pinson v. Rumsfeld*, 192 F. App'x 811, 817 (11th Cir. 2006) (citing *Stebbins v. State Farm Mut. Auto. Ins. Co.*, 413 F.2d 1100, 1102-03 (D.C. Cir. 1969) (per curiam)).

In his complaint, Plaintiff asserts that venue is proper in the Northern District of Florida because "a substantial part of the events giving rise to the claim[s]" occurred here. Doc. 1 at 4. Plaintiff, however, provides no facts to support this conclusory assertion and, based on the other allegations in Plaintiff's complaint, a

claim that a substantial portion of the events occurred in the Northern District is patently false.[3]

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." See 28 U.S.C. § 1404(a); see also id. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."); *Ross v. Buckeye Cellulos Corp.*, 980 F.2d 648, 655 & n.3 (11th Cir. 1993) (noting that 28 U.S.C. § 1404 applies to Title VII claims).

The decision to transfer an action is left to the "sound discretion of the district court." *Roofing & Sheeting Metal Servs. v. La Quinta Motor Inns*, 689 F.2d 982, 985 (11th Cir. 1982). Such transfers may be made *sua sponte* by the district court. See *Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 761 (5th Cir. 1989); *Robinson v. Madison*, 752 F. Supp. 842, 846 (N.D. Ill. 1990) ("A court's authority to transfer cases under § 1404(a) does not depend upon the motion, stipulation or consent of the parties to the litigation.").

---

[3] If this case remained in this District, the District Court could sanction Plaintiff for making an obviously false assertion. See Fed. R. Civ. P. 11(c).

In this case, the following facts support transferring this case to the Middle District of Florida:

- the employment records relevant to the alleged unlawful employment practices likely are located at the USF's campus in the Middle District of Florida;

- absent the alleged discriminatory termination, Plaintiff would have worked at the USF campus in the Middle District of Florida;

- the alleged adverse employment actions—including Plaintiff's reassignment and termination—occurred in the Middle District of Florida;

- all or nearly all of the relevant events occurred in the Middle District of Florida;

- it is likely that all or nearly all of the witnesses reside in or near the Middle District of Florida;

- it is likely that most of the Defendants reside in the Middle District of Florida;

- Plaintiff currently resides in the Middle District of Florida[4];

---

[4] Plaintiff predicts that he will move to the Northern District of Florida. But he does not specify a date by which he will move to the Northern District, the reason he allegedly will move to this District, or the location at which he will live in the District. Plaintiff's claim, therefore, is highly speculative and is insufficient to overcome the weight of the factors which indicate that the Middle District of Florida is the most appropriate venue for this civil action. *See Prather v. Raymond Const. Co.*, 570 F. Supp. 278, 284 (N.D. Ga. 1983) (noting that when deciding whether to

- litigating this case in the Middle District of Florida would afford the parties greater access to the source of proof;

- litigating the case in the Middle District of Florida would facilitate compulsory process for attendance of unwilling witnesses; and

- litigating the case in the Middle District of Florida would minimize the expense of obtaining the attendance of witnesses at trial.

Based on these and other factors, the Middle District of Florida obviously is the most appropriate venue for this civil action. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981) (discussing the factors courts should consider); *Ross*, 980 F.2d at 655 (holding that the district court did not abuse its discretion in transferring the suit to the Middle District of Georgia when all employment records were located in that district and most of the relevant witnesses likely resided in that district); *King/Morocco v. Audi of Grapevine*, 2018 WL 11214829, at *2 (N.D. Ga. Nov. 2, 2018) (transferring the case to the Northern District of Texas because the records relevant to Plaintiff's employment-discrimination claim were located in that district).

---

transfer a case to another district, a plaintiff's choice of forum should be given great weight, but only if he resides in the district of his chosen forum).

### III. CONCLUSION

Because the Middle District of Florida is the most appropriate venue for this civil action, it is **ORDERED** that the clerk of the court:

1. **TRANSFER** this case to the United States District Court for the Middle District of Florida; and

2. close this case file.

**SO ORDERED** this 14th day of June, 2022.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**