## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA
### 801 North Florida Avenue | Tampa, Florida 33602

BOBBY SHED,
Pro Se Plaintiff,

vs.                          CASE NO. 8:22-cv-01327-KKM-TGW

UNIVERSITY OF SOUTH FLORIDA BOARD OF TRUSTEES,
Provost Dwayne Smith, in his official and individual capacities,
Atty. Camille Blake, in her official and individual capacities,
Atty. Joanne Adamchak, in her official and individual capacities,
Dir. Deborah McCarthy, in her official and individual capacities,
Dean Moez Limayem, in his official and individual capacities,
Dean Jacqueline Reck, in her official and individual capacities,
Prof. Jianping Qi, in his official and individual capacities,
Prof. Ninon Sutton, in her official and individual capacities,
Prof. Scott Besley, in his official and individual capacities, and
Prof. Murat Munkin, in his official and individual capacities,
Defendants.

===================================================================
*"Now they [police] just give you citations.  Who Cares? It's Nothing…At Least Nobody Is Raping Anyone [Black Women] Anymore…" (USF Econometrics Professor Murat Munkin, Fall 2019...Audio Linked Below).*
===================================================================

### <u>Amended Complaint and Demand for Jury Trial</u>

Plaintiff, BOBBY SHED, (hereinafter as "Plaintiff" or "Shed")

hereby sues the Defendants, UNIVERSITY OF SOUTH FLORIDA BOARD OF

TRUSTEES (hereinafter as "USF" or "Defendant"), Provost Dwayne

Smith in his official and individual capacities, Attorney

1

Camille Blake in her official and individual capacities, Attorney Joanne Adamchak in her official and individual capacities, Director Deborah McCarthy in her official and individual capacities, Dean Moez Limayem in his official and individual capacities, Associate Dean Jacqueline Reck in her official and individual capacities, Professor Jianping Qi in his official and individual capacities, Professor Ninon Sutton in her official and individual capacities, Professor Scott Besley in his official and individual capacities, and Professor Murat Munkin in his official and individual capacities, and alleges as follows:

## **<u>Jurisdiction and Venue</u>**

1.) This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

2.) Venue is proper pursuant to 28 U.S.C. 1391(b).[1]

## **<u>Parties</u>**

3.) At all times material herein, Plaintiff, BOBBY SHED, was and is a resident of Hillsborough County, Florida.  As a

---

[1] Plaintiff notes transferring magistrate judge wrote that the US District Court for the Middle District of Florida Court is optimal for this case.  Plaintiff respectfully yields to the magistrate judge's decision regarding the venue.

2

Black, American, gay, male with disabilities, Plaintiff belongs to a protected class.

4.) At all times material herein, Defendant, UNIVERSITY OF SOUTH FLORIDA BOARD OF TRUSTEES, was and is a state university. The school's Board of Trustees is the legal entity (corporate body public)with the power to sue or be sued in the school's name. *See Fla. Stat 1001.72.*

*5.)* At all times material herein, Defendant, UNIVERSITY OF SOUTH FLORIDA BOARD OF TRUSTEES, was an employer as defined by the laws under which this action is brought and employs the required number of employees.

6.) At all times material herein, Defendants: Provost Dwayne Smith, Attorney Camille Blake, Attorney Joanne Adamchak, Director Deborah McCarthy, Dean Moez Limayem, Associate Dean Jacqueline Reck, Professor Jianping Qi, Professor Ninon Sutton, Professor Scott Besley, and Professor Murat Munkin, were employed by USF.

### **Administrative Prerequisites and Conditions Precedent**

7.) Plaintiff filed a Discrimination, Retaliation, and Whistleblower complaint with Florida Commission of Human Relations (hereinafter FCHR) and Substantial Weight Review (SWR) with the Equal Employment Opportunity Commission

(hereinafter EEOC) for the retaliatory and discriminatory acts related to employment. A Notice of Rights was issued by EEOC and received by Plaintiff thereafter. This Complaint has been filed within the legally required time after Plaintiff's receipt of EEOC's Notice of Rights.[2]

8.) More than 180 days have elapsed since said filings.[3]

## **Factual Allegations**

9.) Plaintiff applied to and was accepted into USF's graduate school and USF's Ph.D. Finance program in 2017.

10.) Upon matriculation, Plaintiff had a nearly perfect undergraduate GPA (graduated with Magna Cum Laude honors); and Plaintiff was accepted with exceptionally high scores on standardized graduate exams (90th percentile and above).

11.) Upon matriculation, Plaintiff had grant, fellowship, and work contracts in excess of $180,000.00 in connection with Plaintiff's roles with Defendant USF for Plaintiff's research and fellowship/scholarship. [Please See Exhibit 01: Contracts.]

---

[2] Plaintiff notes that the complaint was originally filed in a different venue, then transferred to the present venue.

[3] Plaintiff notes many acts herein are not exclusively related to employment and therefore do not require Conditions Precedent and/or are not time-barred by Administrative Prerequisites attributed to FCHR and/or EEOC.

12.) As of December 2019, Plaintiff had approximately four additional in-person classes and one paper to write in order to receive his Ph.D. in Finance from USF.

13.) At all times material herein, Plaintiff was eligible to participate in USF's graduate school and USF's Finance Ph.D. program as a student under USF's policies.

14.) At all times material herein, Plaintiff was able to perform his job as graduate assistant with USF.

15.) Plaintiff's most recent evaluation, dated 29-July-2019, stated that Plaintiff is an effective communicator, respectful, pleasant, highly ethical, interested in his research, on track to graduate earlier than the time allotted for Ph.D. Programs under USF policies as stated in USF Ph.D. Handbook, and has a passing GPA of "3.12". [Please see Exhibit 02: Evaluation].

16.) At all times material herein, Plaintiff was a member of a protected class(es) as a Black, American, gay, male with disabilities.

**Count I: RETALIATION**

**42 U.S.C. §1981**

**Retaliatory Act: Withholding Funding and Decreasing Funding**

**Defendant(s): USF**

17.) On or around 10-Aug-2018, Plaintiff filed a formal, written, good faith complaint with USF's Office of Diversity Inclusion and Equal Opportunity (hereinafter DIE-O) and university officials.

18.) The 10-August-2018 complaint was based on racial treatment Plaintiff experienced which he perceived to be incommensurate with the treatment of similarly situated individuals.

19.) In the Fall of 2018 when the academic semester commenced, on or around 20-August-2018, Plaintiff's funding was not dispensed to Plaintiff by Defendant USF, nor applied to Plaintiff's accounts for university expenses by Defendant USF. [Please see Exhibit 01: Contracts.]

20.) Plaintiff received notices that his enrollment would be dropped for non-payment.

21.) Plaintiff continued to experience unreasonable delays in receiving funding and a substantial decrease in funding.

22.) Plaintiff complained and continued to complain that the delays and decreases in his funding were in retaliation for the race-based complaint Plaintiff filed approximately two weeks prior to the start of the Fall 2018 semester.

23.) Plaintiff notes at the start of the semesters prior to documenting complaints, Plaintiff did not experience delays and decreases in funding to the extent that would trigger

6

Defendant to issue notices that Plaintiff's enrollment would be dropped for non-payment.

24.) There is a causal nexus between Plaintiff's protected activity of complaining and Defendant's adverse action of withholding and decreasing funding.

25.) At all times material herein, Plaintiff was eligible to receive his funding at the start of the semester in accordance with USF practices and customs.

26.) At all times material herein, Plaintiff who is a Black American, was a member of a protected class under 42 U.S.C. § 1981.

27.) Filing race-based complaints in good faith and complaining of retaliation due to race-based complaints made in good faith are protected activities.

28.) Defendant USF did not decrease and withhold the funding of similarly situated individuals.

29.) Through conversations with USF Office of Financial Aid, Plaintiff discovered that USF dispenses payments of scholarships, fellowships, and/or grants as directed by the Accountable Officer for the scholarship, fellowship, and/or grant.

30.) The Accountable Officer for Plaintiff's largest source of funding is Associate Dean of Muma College of Business, Dr. Jacqueline Reck.

31.) As Associate Dean of the Business School and the Accountable Officer on my payment requests, Dean Jacqueline Reck is a university official whose edicts, words, or acts may fairly be said to represent official policy of the USF.

32.) Any non-retaliatory explanation Defendants might proffer is merely pretextual given the following facts:

    a.) The previous semester USF released my funding in the correct amount which demonstrated that USF knew how to process my payments and how much I should be paid.

    b.) In a meeting on or around January 2019 (Spring 2019), Dean Jacqueline Reck acknowledged that Plaintiff's funds still had not been released for the school year.

    c.) On or around 15-August-2019 (Fall 2019), USF submitted a financial statement to me reporting that USF had already paid all of my funding to me back in the Fall of 2018. This statement is false according to Dean Jacqueline Reck's own account from the January 2019 meeting and from my financial aid ledger which documents when Plaintiff received funds and the amount of Funds Plaintiff received.

      d.)  Dean Jacqueline along with others at USF refused to correct the falsified Financial Statement when I brought it to their attention.

      e.)  Dean Jacqueline Reck either knew better  or should have known better given that she holds a Ph.D. in Accountancy, holds Certified Public Accounting (CPA) credentials, and has years of expertise in government and non-profit accounting and authorship. [Please see Exhibit 03 Dean Jacquelin Reck's Biography.]

      f.)  Moreover, when the actions under this count were reported to the appropriate university designee for discrimination and retaliation at USF: USF DIE-O;  USF did not redress the actions, seek to make Plaintiff whole, nor amend the falsified Financial Statement.

      g.)

33.) But for Plaintiff's race-based complaints, Plaintiff would not have experienced unreasonable delays and decreases in his funding to the extent that he received notices stating he would be disenrolled.

34.) By the conduct described above, Defendant engaged in unlawful practices and retaliated against Plaintiff in violation of 42 U.S.C. § 1981, for which Defendants are liable.

35.) Plaintiff was damaged as a result of Defendant's delaying and decreasing Plaintiff's funding  in retaliation for Plaintiff's good faith complaints.

36.) More recently, on or around 02-February-2023, Plaintiff discovered that through USF, Plaintiff's personally identifiable information (such as Social Security Number, Birthday, etc.) was improperly disclosed to at least three individuals in connection with this litigation.

37.) Subsequent to the improper disclosure stated in the previous paragraph, Plaintiff and his property further face a real and immediate threat of present and future harm.

38.) Plaintiff demands a trial by jury.

**WHEREFORE,** Plaintiff demands judgment against Defendant(s), including, but not limited to, back pay, front pay, liquidated damages, compensatory damages, punitive damages, emotional pain, mental anguish, humiliation, loss of dignity, appropriate corrections to academic records, an injunction against USF stating that USF violated 42 U.S.C. §1981, an injunction preventing USF from continued violations of 42 U.S.C. §1981, together with court costs and other further relief as this Court deems just and proper except for reinstatement.

**Count II: RETALIATION**

**Title VII**

**Retaliatory  Act:  Dismissal  from  Ph.D.  Program  and  Graduate School**

**Defendant(s): USF**

39.) On  or  around  01-Sep-2019,  Plaintiff  filed  a  formal, written,  good  faith  complaint  with  Defendant  USF  based  on racial discrimination, and continued retaliation.

40.) Amongst other things, the 01-Sep-2019 complaint:

    a.)   provided  data  from  the  Hillsborough  County  Clerk which  documented  that  USF  Police  issued  citations  to Black  people  at  a  rate  nearly  300%  more  than  their representation  on  campus  and  nearly  200%  more  than their  representation  in  the  surrounding  Hillsborough County;

    b.)   revealed  that  USF  police  issued  criminal  citations (as  opposed  to  the  lesser  civil  citations)  to  Black people  in  excess  of  44%  of  their  expected  frequency within the population;

    c.)   complained  of  retaliation  of  Plaintiff's  funding being  withheld  and  decreased  in  retaliation  for reporting racism; and

d.)  complained that the retaliation of withholding and decreasing Plaintiff funding was further being covered up by USF by falsifying financial reports.

[Please see raw data and preliminary analyses linked here: https://www.dropbox.com/sh/24ngw9ogolx9o55/AADyguMKIXxS7Yg4ctoiNjGRa?dl=0].

41.) Plaintiff continued to complain in good faith about continued retaliation.

42.) On or around 19-December-2019, USF dismissed Plaintiff from the Ph.D. Finance program.

43.) On or around 03-Jan-2020, USF dismissed Plaintiff from USF Graduate School.

44.) USF either knew or should have known about Plaintiff's formal, written, good faith complaints, and continued complaints based on the following facts:

a.)  Both written complaints were sent to USF's DIE-O.

b.)  On or around 11-January-2019, Plaintiff met with Dean Moez Limayem (Dean of Muma College of Business), Associate Dean Jacqueline Reck (Associate Dean of Muma College of Business), Professor Jianping Qi (Chair of USF Finance Department), and Professor Ninon Sutton (Head of USF Ph.D. Finance Program) regarding continued discrimination, continued retaliation, and denial of academic accommodations.

12

c.) In the 11-January-2019 meeting, Dean Limayem informed the attendees that they must report Plaintiff's complaints whether Plaintiff wanted them to or not. [Please see Exhibit 04: Audio and Transcripts from 11-January-2019 Meeting].

d.) USF Policy 0-007 states that all Supervisory Employees, Deans, Directors, Department Chairs, Coordinators, Unit Heads, Managers, Principal Investigators, and University Police "are required to promptly report" allegations, instances, or reports of discrimination/harassment by or against university employees or students.

45.) Any non-retaliatory explanation Defendant USF proffers regarding Plaintiff's dismissals is merely pretextual as buttressed by the facts that follow.

a.) USF Ph.D. Handbook and USF Graduate School policies afford students a semester of academic probation for academic performance. Plaintiff never received a semester of academic probation due to poor academic performance (or otherwise) prior to dismissal.

b.) Defendant USF did not subject similarly situated individuals to the following sequence of events: delay and decrease their funding without cause (as stated in

Count I), then dismiss them without a probationary semester.

c.) Approximately five months prior to dismissal Plaintiff received an Evaluation demonstrating that he was passing and on track to graduate sooner than the time allotted for Ph.D. students. [Please see Exhibit 02: Evaluation].

d.) While Plaintiff was yet within his appeal period, USF truncated the prescribed time for Plaintiff to appeal the pretextual claims proffered for Plaintiff's dismissals.

e.) Up until and including December 2019, Plaintiff continued to make good faith complaints to supervisory employees who had a duty to officially/formally report Plaintiff's good faith complaints.

46.) There is a causal nexus between Plaintiff's protected activity of complaining in good faith and Defendant's adverse actions of dismissals.

47.) At all times material herein, Plaintiff was eligible for continued participation in USF's graduate program and Ph.D. program as stated in USF's policies.

48.) At all times material herein, Plaintiff (who is a Black American, gay male with disabilities) was a member of a protected class under Title VII.

49.) Filing race-based complaints in good faith and complaining of retaliation and discrimination due to race-based complaints made in good faith are protected activities.

50.) But for Plaintiff's race-based complaints, Plaintiff would not have been dismissed by Defendant.

51.) By the conduct described above, Defendant engaged in unlawful practices and retaliated against Plaintiff in violation of Title VII for which Defendant is liable.

52.) Plaintiff was damaged as a result of Defendant's dismissals in retaliation for Plaintiff's good faith complaints.

53.) Plaintiff demands a trial by jury.

**WHEREFORE,** Plaintiff demands judgment against Defendant(s), including, but not limited to, back pay, front pay, liquidated damages, compensatory damages, punitive damages, emotional pain, mental anguish, humiliation, loss of dignity, appropriate corrections to academic records, an injunction against USF stating that USF violated Title VII, an injunction preventing USF from continued violations of Title VII, together with court costs and other further relief as this Court deems just and proper except for reinstatement.

## Count III: Retaliation[4]

[4]In the interest of clarity, Plaintiff notes this count is not intended to address whether or not Plaintiff was entitled to accommodations due to

**42 U.S.C. §1983 and Fourteenth Amendment of United States Constitution**

**Retaliatory Act: Denial of Academic Accommodations and Subjecting Plaintiff to a Final Exam Exceedingly More Difficult than the Final Exam Given to Similarly Situated Individuals Defendant(s): Professor Murat Munkin (in his official and individual capacities)**

54.) Upon matriculation in Fall 2017, Plaintiff applied for academic accommodations due to documented disabilities.

55.) In Fall 2017, USF approved academic accommodations of extended time on assessments (tests, quizzes); permission to record class lectures and discussions; and flexibility with deadlines.  Other accommodations were approved which Plaintiff rarely accessed.

56.) Each semester during the Plaintiff's enrollment, USF re-approved Plaintiff's accommodations as itemized in the previous paragraph.  Subsequently, at all times material herein, Plaintiff was eligible to receive academic accommodations.

---

disability.  That question was answered by Defendant's initial approval and subsequent reapprovals of Plaintiff's academic accommodations.  Neither is this count intended to address whether or not Defendant discriminated against Plaintiff on the basis of disability.  This count is, however, intended to address whether or not Defendant(s) retaliated against Plaintiff by not providing accommodations that Defendant provided prior to Plaintiff's race-based complaint.

57.) On or around 11-August-2018, Plaintiff filed a formal, written, good faith, race-based complaint with USF, and Plaintiff continued to complain in good faith of actions that he perceived to be retaliatory and/or discriminatory.

58.) On or around 01-September-2019, Plaintiff filed a formal, written, good faith, race-based complaint with USF, and Plaintiff continued to complain in good faith of actions that he perceived to be retaliatory, and/or discriminatory.

59.) The 01-Sep-2019 complaint provided data from the Hillsborough County Clerk which documented that USF Police issued citations to Black people at a rate nearly 300% more than their representation on campus and nearly 200% more than their representation in the surrounding Hillsborough County. The data also revealed that USF police issued criminal citations (as opposed to the lesser civil citations) to Black people in excess of 44% of their expected frequency within the population.

[Please see raw data and preliminary analyses linked here: https://www.dropbox.com/sh/24ngw9ogolx9o55/AADyguMKIXxS7Yg4ctoiNjGRa?dl=0 ].

60.) On or around 09-December-2019, Plaintiff requested to reschedule his Final Exam in Professor Murat Munkin's Econometrics II course which is consistent with his accommodation of flexibility with deadlines.

61.) Professor Murat Munkin provided Plaintiff with a cumulative final exam instead of an exam comparable to the one he provided to and announced to the class which was non-cumulative.

62.) Prior to documenting complaints, Professor Munkin had indicated that Plaintiff could receive exams comparable to the rest of the class if and when Plaintiff had to access an accommodation.

63.) Professor Munkin wrote to Plaintiff that he could have a time period of approximately five days to reschedule the cumulative exam.

64.) Prior to documenting complaints, Professor Murat Munkin had written that Plaintiff could have a time period of approximately 14 days to reschedule exams that were not cumulative.

65.) Professor Murat Munkin denied Plaintiff extended time on quizzes and denied Plaintiff the ability to reschedule quizzes.

66.) Prior to complaints, no such denials were forthcoming from Professor Murat Munkin.

67.) Professor Murat Munkin knew or should have known of Plaintiff's race-based complaints as evidenced by the facts that follow.

a.) On or around 04-September-2019, Plaintiff and Professor Murat Munkin discussed the data contained in the complaint which Plaintiff sent to Professor Murat Munkin. Professor Murat Munkin responded by stating at least nobody is raping your black women anymore like they did in slavery. Now they just give you citations. Who cares? [Please see Exhibit 05: Audio and Transcripts from Professor Murat Munkin's Race Commentary.]

68.) There is a causal nexus between Plaintiff's protected activity of complaining in good faith and Defendant's adverse actions of denying accommodations and providing an exceedingly more difficult Final Exam than that announced to and provided to similarly situated individuals.

69.) Any non-retaliatory explanation proffered by Defendant is merely pretextual as evident by the facts that follow.

a.) Professor Murat Munkin announced to the class that everyone would have a non-cumulative Final Exam. He stated that a cumulative Final Exam would be too burdensome for students.

b.) Professor Murat Munkin had not changed his syllabus for Econometrics II since Spring 2009 until Plaintiff took Econometrics II for credit in Fall 2019. Professor Murat Munkin acknowledged that he changed

his syllabus because Plaintiff. [Please see Exhibit 06: Audio and Transcripts from Professor Murat Munkin's Syllabus Commentary.] [Please see Exhibit 07: Copies of Professor Murat Munkin's Econometric II Syllabi Since Spring 2009.]

c.) Professor Murat Munkin announced to his class that he always gives his doctoral students passing grades, except for the semester Plaintiff took the course for credit. [Please see Exhibit 08: Audio and Transcripts from Professor Murat Munkin's Passing Grade Commentary.]

d.) Plaintiff had a cumulative passing score on all other assessments (quizzes, projects, etc.) in Professor Murat Munkin's course except for the Final Exam which Professor Murat Munkin made a cumulative exam for Plaintiff and truncated the period for Plaintiff to schedule the cumulative Final Exam.

e.) Plaintiff complained to and sought help from Ms. Deborah McCarthy, Director of USF's Student Disability Services (SDS) regarding the matters in this Count. Director Deborah McCarthy affirmed Professor Murat Munkin' professional discretion regarding Plaintiff's accommodations, and cumulative nature and timing of Plaintiff's Final Exam.

20

f.) As the one delegated with authority and autonomy in the matter of implementing and dispensing of my accommodations for Fall 2019 and as a Director of Ph.D. Programs, Professor Murat Munkin is a university official and his acts, words, and/or edicts may fairly be said to represent official policy, practices, and/or customs of USF.

g.) Defendant Professor Murat Munkin was not permitted to disregard the written accommodations of similarly situated individuals.

h.) At all times material herein, Plaintiff was eligible to receive the denied accommodations and a Final Exam comparable to similarly situated individuals.

70.) At all times material herein, Plaintiff (who is a Black American, gay, male with disabilities) was entitled to the protections, rights, and privileges covered under 42 U.S.C. §1983 and The Fourteenth Amendment of the U.S. Constitution.

71.) Filing race-based complaints in good faith and complaining of retaliation and discrimination due to race-based complaints made in good faith are protected activities.

72.) But for Plaintiff's race-based complaints, Plaintiff would not have been denied accommodations and given a cumulative Final Exam by Defendant.

21

73.) By the conduct described in this Count, Defendant engaged in unlawful practices and retaliated against Plaintiff in violation of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. Section 1983, for which Defendant is liable.

74.) Plaintiff was damaged financially, emotionally, and academically as a result of Defendant's retaliation for Plaintiff's good faith complaints.

75.) More recently, on or around 02-February-2023, Plaintiff discovered that through USF, Plaintiff's personally identifiable information (such as Social Security Number, Birthday, etc.) was improperly disclosed to at least three individuals in connection with this litigation.

76.) Subsequent to the improper disclosure stated in the previous paragraph, Plaintiff and his property face a real and immediate threat of present and future harm.

77.) Plaintiff demands a trial by jury.

**WHEREFORE,** Plaintiff demands judgment against Defendant(s), including, but not limited to, back pay, front pay, liquidated damages, compensatory damages, punitive damages, emotional pain, mental anguish, humiliation, loss of dignity, appropriate corrections to academic records, an injunction against USF stating that USF violated the Fourteenth Amendment of the United States Constitution, an injunction preventing USF from continued

violations of the Fourteenth Amendment of the United States Constitution, together with court costs and other further relief as this Court deems just and proper except for reinstatement.

**Count IV: Racial Discrimination**

**Title VII**

**Discriminatory Act: Racial Discrimination in Accepting,**

**Processing, and Resolving Complaints**

**Defendant(s): USF**

78.) USF markets itself as an institution that is free from harassment, discrimination, and retaliation in policies that are public-facing on USF's website. The same policies [Please see Exhibit 09 USF's policies #0-007 and #0-106]. The same policies state that USF complies with all Federal laws regarding retaliation, discrimination, and harassment.

79.) The same policies designate USF's Office of Diversity Inclusion and Equal Opportunity (DIE-O) to receive complaints regarding discrimination, retaliation, harassment, and disability.

80.) Based on USF's public-facing policies, a reasonable person would expect that affiliation with USF in the capacity of a

student, employee, and/or otherwise would be an experience free from discrimination, retaliation, and/or harassment.

81.) According to DIE-O's complaint process form:

    a.)   DIE-O is a neutral fact finder.

    b.)   Complaints received within 120 days of an alleged act of discrimination are considered timely.

    c.)   Upon receipt of a complaint, DIE-O has the option to dismiss an allegation without investigation thereby denying any appeal; open an allegation for investigation; substantiate an allegation "for cause" assuming the complaint was opened for investigation; or close an allegation for "no cause" assuming an allegation was opened for investigation.

    d.)   DIE-O has reserves the discretion to investigate allegations regardless of how the allegation was submitted (verbally, written, and/or otherwise).

    e.)   DIE-O has the authority to conduct a Compliance Review to see if University Policy and Procedures have been followed.

    f.)   Subsequently, DIE-O, in conjunction with other USF officials, can redress adverse behavior; change outcomes of adverse decisions; and/or mitigate the effects of discrimination, retaliation, and/or harassment experienced by complainants.

24

82.) USF Policy 0-007 states that all Supervisory Employees, Deans, Directors, Department Chairs, Coordinators, Unit Heads, Managers, and Principal Investigators, and University Police "are required to promptly report" _allegations_, instances, or reports of discrimination/harassment by or against university employees or students.

83.) Based on USF's public-facing policies, discrimination in accepting, processing, and resolving complaints submitted to USF would materially alter the terms and conditions of one's affiliation with USF as a student, employee, and/or other affiliation by subjecting the potential complainant to continued, prolonged, and/or more severe harassment, retaliation, discrimination, hostility, and/or adverse decisions that could culminate in one's termination and/or dismissal.

84.) On or around 10-Aug-2018, Plaintiff submitted a formal, written, good-faith complaint to DIE-O. Plaintiff continued to complain.

85.) On or around 01-September-2019, Plaintiff submitted a formal, written, good-faith complaint to DIE-O which contained data and analysis regarding USF Police issuance of citations to Blacks at a disparate rate.

86.) On or around 06-March-2020, Plaintiff submitted a formal, written, good-faith Whistleblower Report and Grievance complaint to USF DIE-O.  Plaintiff continued to complain.

87.) At all times material herein, Attorney Camille Blake was the head of DIE-O. [Please see Exhibit 10: Attorney Camille Blake's professional biography in brochure for Title IX (and computer forensics) conference hosted at USF. Attorney Blake has conducted hundreds of EEO Investigations according to her biography.]

88.) In a conversation on or around 13-March-2020, Attorney Camille Blake of USF DIE-O refused to acknowledge receipt of Plaintiff's complaints from 01-September-2019 and from 06-March-2020.

89.) On or around 01-April-2020, USF DIE-O Attorney Camille Blake sent Plaintiff an email documenting that she had deleted Plaintiff's complaint from her server without reading it.  The deleted complaint alleged falsified financial records from USF and reported USF policing disparity data. [Please see Exhibit 11: Attorney Camille Blake Deletes Complaint with Policing Disparity Data Without Reading It.]

90.) USF Attorney Camille Blake did not investigate timely submitted allegations from Plaintiff's March 2020 Complaint to DIE-O.  Attorney Camille Blake's letter dismissing

Plaintiff's written complaint from March 2020 responds to Plaintiff's allegations as follows.

a.) Regarding Plaintiff being subjected to a cumulative Final Exam as opposed to the non-cumulative final exam that other students received as announced to the class by Professor Murat Munkin, the DIE-O response letter states: "For DIE-O purposes, SDS would be the subject matter expert for the interpretation of any SDS determined reasonable accommodations…DIE-O dismisses."

1. Plaintiff notes USF Policy 0-108 states: "Complaints of disability discrimination, harassment, or retaliation must be filed with the Office of Diversity, Inclusion & Equal Opportunity, in accordance with Policy 0-007, Diversity, Inclusion & Equal Opportunity: Discrimination and Harassment".

2. Therefore DIE-O had the authority to investigate whether or not SDS (Ms. Deborah McCarthy) and Professor Murat Munkin followed university policies and procedures and/or discriminated against Plaintiff, but DIE-O opted to dismiss rather than investigate.

b.) Regarding Professor Murat Munkin stating at least nobody rapes Black women, now the police just gives

you citations who cares, the DIE-O response letter states: "The context here was not racial discrimination but rather an academic discussion…So, DIE-O Dismisses".

1. Plaintiff notes Professor Murat Munkin stated his unsolicited personal views regarding Black men, what he perceives to be troublesome Black hair, what he perceives to be troublesome Black styles of dress, Muslim women, and Black basketball players.

2. Plaintiff notes that he is often redirecting Professor Murat Munkin back to the academic topic in the recording: "So, back to econometrics"; but not soliciting Professor Murat Munkin's personal views.

c.) Regarding due process items such as attenuating Plaintiff's appeal appeal period, DIE-O response letter ignored allegations regarding due process.

91.) Through a public records request, NAACP acquired data that documents disparate impacts in USF DIE-O's racial discrimination in accepting, processing, and resolving complaints. A preliminary analysis of the data shows that

USF fails the 4/5-ths Rule[5] adopted by the EEOC and other federal agencies to determine if there is Disparate Impact within an organization's processes.  Bear in mind this low percentage does not include instances in which DIE-O deletes complaints without reading them (as USF DIE-O Attorney Camille Blake deleted Plaintiff's complaint from September 2019).

| Racial Complaints Sustained Based on Race of Complainant | | | | |
|---|---|---|---|---|
| R A C E | | Applications | Percent Sustained | 4/5 Rule (80%) |
| | Black | 43 | 0.069767442 | 0.069/0.125 = 0.552 = Disparate Impact |
| | White | 88 | 0.125 | |
| | Asian | 29 | 0 | |

92.) Moreover the data reveals that USF only sustained 1 complaint of a Black complainant against a White respondent in approximately 10 years and across more than 200 complaints.

93.) A preliminary analysis reveals that one sustained complaint of a Black complainant against a White respondent over a decade of hundreds of complaints is not statistically different from 0, which lends itself to theory of

[5] The 4/5-Rule tests the outcome of processes based on race.  If the racial group(s) with the least favorable outcome has a proportion of the favorable outcome that is less than 4/5 or 80% of the group with the most favorable outcome, then there is prima facie evidence for disparate impact. Within this context Plaintiff posits USF only sustains close to 50% (not 80%) of the discrimination complaints documented by Blacks relative to Whites.  Bear in mind this low percentage does not include instances in which DIE-O deletes complaints without reading them (as USF DIE-O Attorney Camille Blake deleted Plaintiff's complaint). Note a statistical significance test is not required according to EEOC guidelines.  Further note this preliminary analysis focuses on race (not ethnicity) of the complainant.

Inexorable "0" Zero, providing prima facie evidence of disparate impact in USF's handling complaints[6].

94.) These data illuminate the handling of Plaintiff's written complaints to DIE-O.

95.) Race was a motivating factor in the deletion and dismissal of Plaintiff's complaints to USF.

96.) Any non-racial explanation Defendant USF proffers for the deletion and dismissal of Plaintiff's complaints is merely pretextual as buttressed by the facts that follow:

    a.) Defendant USF (through its Attorney Camille Blake) did not delete (without reading) complaints containing data that substantiate a pattern and practice of discrimination in USF policing from similarly situated complainants.

    b.) Defendant USF (through its Attorney Camille Blake) did not delete (without reading) complaints containing copies of falsified financial statements from similarly situated complainants.

    c.) Defendant USF (through its Attorney Camille Blake) did not ignore formal written complaints alleging violation of due process from similarly situated complainants.

---

[6] Plaintiff notes Angela DeBose vs USF used 'Inexorable 0' to substantiate claims of discrimination at USF. [Please see Exhibit 14: Inexorable "0" Zero Analysis from Debose vs. USF.]

30

d.)   Defendant USF disproportionately dismisses (prior to investigating) complaints from Black complainants relative to complaints from white complainants according to the EEOC Eighty Percent (4/5-th's) Rule.

e.)   Defendant USF (through its Attorney Camille Blake) did not refuse to confirm receipt of complaints from similarly situated individuals.

f.)   Before or around the same time that Plaintiff submitted his complaint to USF, USF received complaints from another minority working within USF's Police department (Ms. Trena Michelle Reddick) which was similar to Plaintiff's complaint in that it referenced problems with USF's policing data.

g.)   Through her complaints, Ms. Trena Michelle Reddick informed USF that she felt forced to falsify policing data while working within USF policing unit and after she refused; she experienced retaliation, harassment, and found a noose hanging in her office [Please reference Trena Michelle Reddick vs. USF (2020)].

h.)   If Defendant USF were serious about about its legal obligations to be a discrimination-free, retaliation-free, and harassment-free organization, it would have seriously investigated Plaintiff's complaints as opposed to deleting Plaintiff's

complaints considering that Defendant USF received many complaints regarding USF policing data within close temporal proximity.

 i.) Through USF's DIE-O Office with access to expertise such as an attorney (Ms. Camille Blake) who is a member of the Florida BAR, has significant experience in EEO, has access to computer forensics; USF either knew or should have known of the ramifications associated with deleting complaints, ignoring allegations, refusing to acknowledge receipt of complaints when so asked, and disproportionately dismissing complaints from Black complainants prior to conducting an investigation.

97.) At all times material herein, Plaintiff was eligible to submit complaints to DIE-O and have his complaints thoroughly investigated.

98.) At all times material herein, Plaintiff (who is a Black American, gay male with disabilitiesa) was a member of a protected class under Title VII.

99.) But for Defendant's racialized handling of complaints, Plaintiff would have received a fair and speedy remedy to his complaints, endured less retaliation and discrimination, and been afforded an opportunity to readily

savage his academic career, grants, fellowships, research, and funding.

100.) By the conduct described in this Count, Defendant engaged in unlawful practices and discriminated against Plaintiff in violation of the Title VII, for which Defendant is liable.

101.) Plaintiff was damaged financially, emotionally, and academically as a result of Defendant's unlawful discrimination.

102.)    Plaintiff demands a trial by jury.

**WHEREFORE,** Plaintiff demands judgment against Defendant, including, but not limited to, back pay, front pay, punitive damages, liquidated damages, compensatory damages, emotional pain, mental anguish, appropriate corrections to academic records, an injunction against USF stating that USF violated Title VII, an injunction preventing USF from continued violations of the Title VII, together with court costs and other further relief as this Court deems just and proper except for reinstatement.

**<u>Count V</u>**

**<u>Florida Whistleblower against Defendants:</u>**

**USF,**

**Attorney Camille Blake, in her official capacity,
Attorney Joanne Adamchak, in her official capacity,
Ms. Deborah McCarthy, in her official capacity,
Dean Moez Limayem, in his official capacity,
Associate Dean Jacqueline Reck, in her official
capacity,
Professor Jianping Qi, in his official capacity,
Professor Ninon Sutton, in her official capacity,
Professor Scott Besley, in his official capacity, and
Professor Murat Munkin, in his official capacity.**

103.) USF markets itself as an institution that is free from harassment, discrimination, and retaliation in policies that are public-facing on USF's website. The same policies [Please see Exhibit 12 USF's policies #0-007 and #0-106]. The same policies state that USF complies with all Federal laws regarding retaliation, discrimination, and harassment.

104.) The same policies designate USF's Office of Diversity Inclusion and Equal Opportunity (DIE-O) to receive complaints regarding discrimination, retaliation, harassment, and disability.

105.)   Based on USF's public-facing policies, a reasonable person would expect that affiliation with USF in the capacity of a student, employee, and/or otherwise would be an experience free from discrimination, retaliation, and/or harassment.

106.) According to DIE-O's complaint process form:

a.)    DIE-O is a neutral fact finder.

b.)  Complaints received within 120 days of an alleged act of discrimination are considered timely.

c.)  Upon receipt of a complaint, DIE-O has the option to dismiss an allegation without investigation thereby denying any appeal; open an allegation for investigation; substantiate an allegation "for cause" assuming the complaint was opened for investigation; or close an allegation for "no cause" assuming an allegation was opened for investigation.

d.)  DIE-O has reserves the discretion to investigate allegations regardless of how the allegation was submitted (verbally, written, and/or otherwise).

e.)  DIE-O has the authority to conduct a Compliance Review to see if University Policy and Procedures have been followed.

f.)  Subsequently, DIE-O, in conjunction with other USF officials, can redress adverse behavior; change outcomes of adverse decisions; and/or mitigate the effects of discrimination, retaliation, and/or harassment experienced by complainants.

107.)    USF Policy 0-007 states that all Supervisory Employees, Deans, Directors, Department Chairs, Coordinators, Unit Heads, Managers, and Principal

Investigators, and University Police "are required to promptly report" _allegations_, instances, or reports of discrimination/harassment by or against university employees or students.

108.) Based on USF's public-facing policies, discrimination in accepting, processing, and resolving complaints submitted to USF would materially alter the terms and conditions of one's affiliation with USF as a student, employee, and/or other affiliation by subjecting the potential complainant to continued, prolonged, and/or more severe harassment, retaliation, discrimination, hostility, and/or adverse decisions that could culminate in one's termination and/or dismissal.

109.) On or around 10-Aug-2018, Plaintiff submitted a formal, written, good-faith complaint to DIE-O. Plaintiff continued to complain.

110.) On or around 01-September-2019, Plaintiff submitted a formal, written, good-faith complaint to DIE-O which contained data and analysis regarding USF Police issuance of citations to Blacks at a disparate rate.

111.) On or around 06-March-2020, Plaintiff submitted a formal, written, good-faith Whistleblower Report and Grievance complaint to USF DIE-O. Plaintiff continued to complain.

112.)     On or around 11-January-2019, Plaintiff met with Dean Moez Limayem (Dean of Muma College of Business), Associate Dean Jacqueline Reck (Associate Dean of Muma College of Business), Professor Jianping Qi (Chair of USF Finance Department), and Professor Ninon Sutton (Head of USF Ph.D. Finance Program) regarding continued discrimination, continued retaliation, and denial of academic accommodations.

113.)     In the 11-January-2019 meeting, Dean Limayem informed the attendees that they had a legal duty to report Plaintiff's complaints whether Plaintiff wanted them to or not. [Please see Exhibit 03: Audio and Transcripts from 11-January-2019 Meeting].

114.)     USF Policy 0-007 states that all Supervisory Employees, Deans, Directors, Department Chairs, Coordinators, Unit Heads, Managers, and Principal Investigators, and University Police "are required to promptly report" *allegations*, instances, or reports of discrimination/harassment by or against university employees or students.

115.)     A public records request from 2022 revealed that no such reports had been made by any Defendants listed in this count who received and were aware of Plaintiff's complaint

from 01-September-2019 (which contained data on racial

disparity in policing and falsified financial statements).

116.)      On or around 06-March-2020, Plaintiff submitted a

Whistleblower Report and Grievance to USF DIE-O.  In a

conversation on or around 13-March-2020, Attorney Camille

Blake of USF DIE-O refused to acknowledge receipt of

Plaintiff's complaints.

117.)      On or around 01-April-2020, USF DIE-O Attorney Camille

Blake sent Plaintiff an email documenting that she had

deleted Plaintiff's complaint which documented falsified

financial records from USF and reported USF policing

disparity data.

118.)      OCR and FCHR have intimated that USF did not provide

documentation of Plaintiff's complaint from September 2019

(which contained data on racial disparity in policing and

falsified financial statements); nor signed reports of

Plaintiff's allegations from faculty as a part of OCR's and

FCHR's investigations.

119.)      Such concealments have criminal consequences beyond

civil legalities and represent tremendous malfeasance by a

government entity.

120.)      Plaintiff reports these concealments and malfeasance

under Whistleblower Laws within a timely manner (within 180

days after investigation and/or knowledge of event) and to

the proper person as required by Florida law (a court of

law).

121.)     Plaintiff demands a trial by jury.

**WHEREFORE,** Plaintiff demands judgment against Defendant, including, but not limited to, back pay, front pay, punitive damages, liquidated damages, compensatory damages, emotional pain, mental anguish, appropriate corrections to academic records, an injunction against USF stating that USF violated Florida Whistleblowers Act, an injunction preventing USF from continued violations of the Florida Whistleblowers Act, together with court costs and other further relief as this Court deems just and proper except for reinstatement.

**Count VI: First Amendment Violation**

**First Amendment of US Constitution and 42 USC Section 1983**

**Defendant(s): Attorney Joanne Adamchak**

122.)     USF Policy 0-106 "Public Records" state that "The USF System ("University") does not have one centralized Public Records Office. Public Records Requests ("PRR") under Chapter 119, Florida Statutes may be submitted to <u>any</u> custodian of a University record pursuant to Florida

Statutes and USF System Policy 0-106." [Please see Exhibit
13: Message from USF General Counsel's Website].

123.)    In the Fall 2019, Plaintiff submitted several public
records requests via e-mail to custodian of records related
to his funding.

124.)    To contextualize the request, each records request
contained information documenting that Plaintiff reported
harassment and discrimination in USF policing and
subsequently  experienced retaliatory decreases and
withholdings of funds.

125.)    Plaintiff's communications were responded to by USF
Attorney Joanne Adamchak, to whom Plaintiff had not sent
the records request, stating that Plaintiff must only
communicate with Associate Dean Jacqueline Reck regarding
funding and  enrollment.

126.)    Plaintiff notes that there were many other
custodians of Plaintiff's funding other than Dean Reck who
herself admitted in a January 2019 meeting that so many
hands have to touch my funding before it is released to me.

127.)    Plaintiff reminded Attorney Adamchak that USF policy
states that a requester can submit a request to any
custodian of records.

128.)     Plaintiff continued to submit record requests including the data on USF policing to provide a proper context.

129.)     Attorney Adamchak continued to respond to the requests, though the requests for records were not sent to her considering that she had not been a custodian of any of Plaintiff's funding records, and Plaintiff had never even met Attorney Adamchak.  Attorney Adamchak stated that Plaintiff's  e-mails for records request would be held without reply from the person to whom Plaintiff sent the requests.

130.)     Attorney Adamchak referred Plaintiff to an agency at USF for failure to comply with USF Policy.

131.)     At all times material herein, Plaintiff was eligible to make a records request with contextual data on race, and receive a response from the appropriate custodian(s) under USF Policy and the First Amendment of the U.S. Constitution.

132.)     The actions under this count constitute a wanton, intentional, and reckless disregard for Plaintiff's First Amendment Rights under the US constitution which protects free speech, political speech, and the right to petition the government (even for records).

133.)    Race was a motivating factor in the violation of
Plaintiff's right given the following:

    a.) Plaintiff has sent multiple emails to many people
working on Plaintiff's funding previously that did not
contain the policing disparity data.  These messages
were not intercepted by USF Attorney Joanne Adamchak.
Only when the racial data was included for analysis
were the e-mail intercepted and held without response
from the person to whom they were sent.

    b.) USF did not change the policy listed on its General
Counsel website after Plaintiff reminded Attorney
Adamchak of the policy that allows requests of records
from any custodian of records. Yet, Plaintiff's
requests were still intercepted and held without
response from the custodian to whom the request was
sent.

    c.) Attorney Adamchak is a university official, licensed
attorney, amongst the highest rank members of USF
general legal counsel, and her words, acts, and/or
edicts can be said to fairly represent custom, policy,
and/or practice of USF.

134.)    Any non-discriminatory and/or non-violation of First
Amendment excuse Attorney Adamchak proffers is merely
pretextual.

135.)    Plaintiff demands a trial by jury.

**WHEREFORE,** Plaintiff demands judgment against Defendant, including, but not limited to, back pay, front pay, punitive damages, liquidated damages, compensatory damages, emotional pain, mental anguish, appropriate corrections to academic records, an injunction against USF stating that USF violated First Amendment and 42 USC Section 1983, an injunction preventing USF from continued violations of the First Amendment and 42 USC Section 1983. together with court costs and other further relief as this Court deems just and proper except for reinstatement.


**Count VII: Fifth Due Process Violation**

**Fifth Amendment of US Constitution**

**Defendant(s): Provost Dwayne Smith**


136.)    USF Grievance Policy grants students the right to submit grievances within approximately three weeks when the university is in session and conducting business, excluding holidays.

137.)    After receiving a letter of dismissal from USF and during the grievance period, Plaintiff wrote to Provost Dwayne Smith requesting that an evaluation that had been withheld be released.    Plaintiff wanted to use the

evaluation in his grievance because Plaintiff was confident of his performance.

138.)    Provost Dwayne Smith responded to Plaintiff  in writing stating that he had investigated my case, my time to file the  proposed had expired yesterday, and the requested evaluation would not be forthcoming.

139.)    Provost Dwayne Smith wrote the previous response while Plaintiff was still within his time to file  a grievance according to USF policy.   Subsequently, Provost Smith truncated and attenuated Plaintiff's time to submit a grievance.

140.)    At all times material herein, Plaintiff was eligible to file an appeal of his dismissals.

141.)    At all times material herein, Plaintiff had procedural due process interest and a property rights due process interest in receiving a graduate diploma.

142.)    By the conduct described within this Count, Provost Smith violated Plaintiff's Fifth Amendment Rights to Due Process.   The violation was reckless, intentional, and a wanton disregard for Plaintiff's Due Process Rights.

143.)    Any excuse Defendant offers for violating Plaintiff's rights to Due Process are merely pretextual given the following facts:

a.) *After* receiving a letter of dismissal from USF, Plaintiff received a letter stating that he was entitled to a probationary period.

b.) In retaliatory, intentional, and reckless haste to dismiss Plaintiff without due process, the written probationary period was never granted to Plaintiff.

c.) The two items in the paragraph above indicate that Provost Smith either did not fully investigate Plaintiff's case as he suggested and/or he did investigate and proceeded with the violation of Due Process. This points to carelessness and recklessness of the Due Process violation.

d.) When Plaintiff informed Provost Smith of the discrepancy herein, he did not seek to make Plaintiff whole or repair any damages caused to Plaintiff. This points to the intentionality of the Due Process violation.

144.)    Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff demands judgment against Defendant, including, but not limited to, back pay, front pay, punitive damages, liquidated damages, compensatory damages, emotional pain, mental anguish, appropriate corrections to academic records, an injunction against USF stating that USF violated Fifth Amendment Due Process, an injunction preventing USF from

continued violations of the Fifth Amendment Due Process, together with court costs and other further relief as this Court deems just and proper except for reinstatement.

## Count VIII: Treble Damages

145.)    In December 2019 and January 2020, Plaintiff received certified letters of dismissal in the USF Postal mail from USF.

146.)    Plaintiff checked the tracking upon receipt and the tracking showed that the letter was still in route.

147.)    When Plaintiff took the letter to the Post Master, Plaintiff was told that there  is no way that the mail was sent through the US Postal system because it has to pass through a particular distribution center to arrive at the designated address.  That distribution center was not listed on the tracking and the tracking stated that the letter was still in route to Plaintiff even though the letter had arrived to Plaintiff.

148.)     The only logical conclusion is mail tampering which is punishable by treble damages in civil litigation.

149.)     Plaintiff demands treble damages.


 Thank you very kindly for your prayerful consideration of this pleading.

Very Respectfully Submitted,


   Dated:  Monday, 20-March-2023

   By:   /s/ Bobby Shed
         Bobby Shed
         5004 East Fowler Avenue Unit C-102
         Tampa, FL 33617
         Phone: (386)235-0133
         Fax: 888-310-3591
         Email: ShedBobby@GMail.com with copy to BobbyShed@PM.ME


CERTIFICATE OF SERVICE


I hereby certify that on March 20, 2023, I filed the foregoing with the Clerk
of the Court which should cause the Defendants' attorneys to receive
notification electronically.


Richard C. McCrea, Jr. | Florida Bar No. 351539 | Email: mccrear@gtlaw.com
                       -and-
      Cayla M. Page | Florida Bar No. 1003487 | Email: mccreac@gtlaw.com
                  GREENBERG TRAURIG, P.A.
         101 E. Kennedy Boulevard, Suite 1900 Tampa, FL 33602
         Telephone: (813) 318-5700 | Facsimile: (813) 318-5900
                  *Attorneys for Defendants*