UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BOBBY SHED,

    Plaintiff,

v.                                        Case No: 8:22-cv-1327-KKM-TGW

UNIVERSITY OF SOUTH FLORIDA
BOARD OF TRUSTEES, et al.,

    Defendants.
_____

## ORDER

Plaintiff Bobby Shed sues the University of South Florida Board of Trustees and various affiliated individuals under § 1981, § 1983, Title VII, and the Florida Whistleblower's Act. 5th Am. Compl. (Doc. 58). Defendants move to dismiss Shed's Fifth Amended Complaint under Rule 12(b)(6). Mot. to Dismiss 5th Am. Compl. (Doc. 67). All but one of Shed's claims warrant dismissal, so the motion is granted as to all but part of Count III. Shed also moves for clarification regarding initial disclosures, which the Court resolves. Mot. for Clarification (Doc. 119).

I.   BACKGROUND

Shed was a Ph.D. student at the University of South Florida (USF) beginning in 2017. 5th Am. Compl. ¶ 9. He was provided funding as a part of this position, including

grants and a position as a graduate assistant. *Id.* ¶¶ 11, 14. Shed is "a Black, American, gay, male with disabilities." *Id.* ¶ 16.

Shed filed several internal complaints alleging racial discrimination at USF. First, on August 10, 2018, he filed a "formal, written, good faith complaint with USF's Office of Diversity Inclusion and Equal Opportunity" "based on racial treatment [he] experienced which he perceived to be incommensurate with the treatment of similarly situated individuals." *Id.* ¶¶ 17–18. Then, on September 1, 2019, he filed a complaint "which documented that USF Police issued citations to Black people" at a higher rate than their representation on campus. *Id.* ¶¶ 58–59. Finally, on March 6, 2020, Shed "submitted a formal, written, good-faith Whistleblower Report and Grievance complaint." *Id.* ¶ 86.

Shed alleges that his internal complaints were not timely reviewed and that adverse actions were taken against him after he filed them. For example, he alleges that he was denied his disability accommodations during exams, his scholarship and graduate assistant funding was withheld, and he was eventually dismissed from the Ph.D. and graduate programs. *Id.* ¶¶ 19, 42–43, 61–66. He sues USF and several members of its staff in their individual and official capacities, including Camille Blake, Joanne Adamchak, Deborah McCarthy, Moez Limayem, Jacqueline Reck, Jianping Qi, Ninon Sutton, Scott Besley, and Murat Munkin.

2

Shed originally filed this action in the Northern District of Florida in March 2022 as a shotgun pleading. Transfer Order (Doc. 7). After it was transferred to the Middle District, Shed was afforded four opportunities to file a complaint free of pleading defects. *See* Orders (Doc. 12; Doc. 18; Doc. 29; Doc. 39). Defendants now move to dismiss the fifth amended complaint for failure to state a claim.

## II. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

3

alleged." *Id.* When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). In addition, pro se pleadings are to be "liberally construe[d]" and held to "less stringent standards," but the court "cannot act as de facto counsel or rewrite an otherwise deficient pleading to sustain an action." *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020) (quotations omitted).

## III.   ANALYSIS

In his fifth amended complaint, Shed brings eight claims against Defendants. 5th Am. Compl. The first alleges that USF retaliated against him by withholding his funding for filing the August 2018 complaint, in violation of 42 U.S.C. § 1981. *Id.* ¶¶ 17, 19. Count II alleges retaliation under Title VII because USF dismissed him from his Ph.D. program and the graduate school after he filed the September 2019 complaint. *Id.* ¶¶ 39, 42–43. The third count alleges that Defendant Munkin retaliated against him in violation of 42 U.S.C. § 1983 by refusing to provide academic accommodations after he filed the August 2018 and September 2019 complaints. *Id.* ¶¶ 57–59, 60–62. In Count IV, Shed alleges that USF discriminated against him by failing to handle his internal complaints in a timely and proper way in violation of Title VII. *Id.* ¶¶ 90, 95. The fifth count alleges that USF and the individual defendants in their official capacities violated the Florida Whistle-blower's Act. *Id.* ¶¶ 103–21. Count VI alleges that Adamchak violated Shed's

First Amendment rights by holding and not responding to records requests he sent to various USF officials. *Id.* ¶¶ 129–32. In Count VII, Shed alleges that Smith violated Shed's Fifth Amendment rights by failing to follow certain school grievance procedures after Shed was dismissed from the school. *Id.* ¶¶ 137–42. Finally, Count VIII requests "treble damages" for "mail tampering." *Id.* ¶¶ 145–149.

### A. Count I

Defendants argue that the Eleventh Amendment bars Shed's first claim. They are correct. In Count I, Shed sues USF, which is an arm of the State of Florida and thus entitled to sovereign immunity from damages suits unless abrogated by Congress or waived by the State. *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1287–88 (11th Cir. 2003) (determining that USF has sovereign immunity); *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473–74 (1987) (articulating "certain exceptions to the reach of the Eleventh Amendment" including waiver by the State and abrogation by Congress).

Congress has not abrogated, and Florida has not waived, sovereign immunity for § 1981 actions. *Gamble v. Fla. Dep't of Health and Rehab. Servs.*, 779 F.2d 1509, 1513, 1516–17 (11th Cir. 1986) (explaining that Florida does not waive immunity for federal civil rights actions); *Henry v. Fla. Bar*, 701 F. App'x 878, 881 (11th Cir. 2017) (per curiam).

5

Shed also requested an injunction "preventing USF from continued violations of 42 U.S.C. § 1981." 5th Am. Compl. at 10. Although the Eleventh Amendment does not bar claims for prospective relief, *Edelman v. Jordan*, 415 U.S. 651, 664 (1974), Shed does not have standing to bring a claim for prospective relief because Shed makes no allegation of future injury, *see 31 Foster Child. v. Bush*, 329 F.3d 1255, 1265 (11th Cir. 2003) ("When a plaintiff cannot show that an injury is likely to occur immediately, the plaintiff does not have standing to seek prospective relief even if he has suffered a past injury."). Shed has already been dismissed from his program at USF. 5th Am. Compl. ¶ 42–43. He makes no allegation that the alleged retaliation against him is ongoing or imminent.

In rebuttal, Shed argued in response to the Defendant's motion to dismiss his fourth amended complaint that he asserts continuing harm because his "academic and employment records were tarnished (and continue to be tarnished) by discrimination and retaliation." Resp. to Mot. to Dismiss 4th Am. Compl. (Doc. 46) at 6. But whether the effects of USF's past alleged retaliation are ongoing is beside the point. Shed fails to allege that USF continues to retaliate against him.

Shed also claims in the fifth amended complaint that his personally identifying information "was improperly disclosed to at least three individuals" and he therefore suffers a real and immediate threat of future injury. 5th Am. Compl. ¶¶ 36–37. This disclosure though does not save his prospective relief claim. First, the alleged improper disclosure

6

occurred "in connection with this litigation," not in retaliation for his internal complaint. *Id.* ¶ 36. Second, Shed does not allege facts that USF *continues* to disclose his information in retaliation, only that it "was improperly disclosed to at least three individuals" in the past. *Id.* Thus, Shed lacks standing to seek prospective relief under Count I and the Eleventh Amendment bars any claim for damages. Count I is dismissed.

### B. Count II

Defendants argue that Shed fails to state a cause of action under Title VII in Count II. To successfully establish a Title VII retaliation claim against an employer, "a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events." *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008). To establish that he engaged in statutorily protected activity, "a plaintiff must show that [he] 'had a good faith, reasonable belief that the employer was engaged in unlawful employment practices.'" *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1301 (11th Cir. 2002) (quoting *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)). Of course, not all acts taken by employers are unlawful employment practices. *See* 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice *by this subchapter* . . . ." (emphasis added)). Title VII generally prohibits

7

discrimination in employment based on certain protected characteristics. But it "is not a general bad acts statute" and "it does not prohibit . . . employers from retaliating against an employee based on her opposition to discriminatory practices that are outside the scope of Title VII." *Bonds v. Leavitt*, 629 F.3d 369, 384 (4th Cir. 2011).

Here, Shed does not allege that USF retaliated against him for complaining about an *employment* practice made unlawful by Title VII. Instead, he alleges that USF retaliated against him by decreasing his funding after complaining about USF Police's alleged discrimination. Therein lies Shed's pleading problem: whether true or not, USF Police's treatment of *private* individuals is not an *employment* practice. *See, e.g., Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 135–36 (2d Cir. 1999) (determining that plaintiff failed to make out retaliation claim when he reported racial treatment of private citizens by employees); *Bakhtiari v. Lutz*, 507 F.3d 1132, 1137 (8th Cir. 2007) ("Complaining about an entity's actions outside the ambit of an employment practice is unprotected by Title VII." (internal quotations omitted)).

Shed also appears to allege that USF retaliated against him when he complained about the decreased funding, which was in his view retaliation. 5th Am. Compl. ¶ 40. The argument looks to be that USF decreased his funding in retaliation for his complaining about USF Police practices, and then USF dismissed him in retaliation for complaining about the decreased funding. But retaliation for complaining about a non-employment

8

related practice is also not a "practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). Thus, Shed's complaints about USF Police actions and his decreased funding are not protected from retaliation so he fails to state a claim under Title VII.

### C. Count III

In Count III, Shed sues Munkin "in his official and individual capacities" for violations of § 1983 by refusing to provide academic accommodations. 5th Am. Compl. at 16. Because an official capacity suit "generally represent[s] only another way of pleading an action against an entity of which the officer is an agent," it is "in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Just as USF is immune from suits under § 1981, USF is also immune from suits for damages under § 1983. Shed lacks standing for injunctive relief, so any action against Munkin in his official capacity fails. *Supra* section III.A; *Gamble*, 779 F.2d at 1511 (explaining that Florida does not waive immunity for § 1983 claims).

Defendants do not argue that Shed's claim against Munkin in his individual capacity fails to state a claim, but the Court suspects it would if Defendants moved for judgment on the pleadings. Shed alleges that Munkin refused his disability accommodations in retaliation for Shed's race-based complaints, citing the Fourteenth Amendment. 5th Am. Compl. at 16. The Court is unaware of any cases recognizing a cause of action for

retaliation based on the Equal Protection Clause. *See Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997) ("A pure or generic retaliation claim . . . simply does not implicate the Equal Protection Clause."); *Underwood v. Boisot*, No. 7:07-CV-01228, 2008 WL 11422055, at *3 (N.D. Ala. Mar. 4, 2008). Thus, Count III, in part, survives.

**D. Count IV**

Defendants argue that Shed fails to state a Title VII employment discrimination claim in Count IV. Title VII makes it unlawful for an employer "to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). But not all actions taken by an employer constitute adverse employment actions. "[T]o support a claim under Title VII's anti-discrimination clause[,] the employer's action must impact the 'terms, conditions, or privileges' of the plaintiff's job in a real and demonstrable way." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). This is an objective inquiry, so "the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id.*

Here, Shed alleges that USF handled his internal complaints less effectively because of his race. But the handling of internal complaints is not an adverse employment action because it has no bearing on a term, condition, or privilege of his employment. *See id.*;

10

*Everson v. Coca-Cola Co.*, 241 F. App'x 652, 653 (11th Cir. 2007) (holding that "failure to respond to [plaintiff's] internal complaints" did not constitute an adverse employment action because it is not the "type[] of action[] that would have any 'material' affect on her employment"). Thus Count IV fails to state a claim.

E. **Count V**

Defendants argue that Count V, which alleges violation of Florida's Whistle-blower's Act, should be dismissed for the same reason as Count IV—Shed fails to show an adverse employment action taken against him. The Florida Whistle-blower's Act bars state or local agencies or independent contractors from "dismiss[ing], disciplin[ing] or tak[ing] any other adverse personnel action against an employee for disclosing" certain information, like violations of the law by the agency. § 112.3187(4)(a), Fla. Stat. The Act defines adverse personnel action as "the discharge, suspension, transfer, or demotion of any employee or the withholding of bonuses, the reduction in salary or benefits, or any other adverse action taken against an employee within the terms and conditions of employment by an agency or independent contractor." *Id.* § 112.3187(3)(c). And the Act further bars the agency or independent contractor from "tak[ing] any adverse action that affects the rights or interests of a person in retaliation for" the person's protected disclosure. *Id.* § 112.3187(4)(b).

While the Act seems to define "adverse action" more broadly than Title VII, to include more than an adverse *employment* action, Shed fails to allege any adverse action

11

taken against him after, or because of, his "Whistleblower Report and Grievance." 5th Am. Compl. ¶ 116. Thus, he fails to state a claim under the Florida Whistle-blower's Act.

### F. Count VI

Defendants argue Count VI fails to state a plausible First Amendment claim against Adamchak because "[t]here is no constitutional right to have access to particular government information." Mot. to Dismiss 5th Am. Compl. at 15 (quoting *Houchins v. KQED, Inc.*, 438 U.S. 1, 14 (1978)). The Court agrees. The First Amendment does not give Shed the right to public records. *See Foto USA, Inc. v. Bd. of Regents of Univ. Sys. of Fla.*, 141 F.3d 1032, 1035 (11th Cir. 1998) ("There is no First Amendment right of access to public information."). Thus, Count VI is dismissed.

### G. Count VII

Defendants argue this count fails to state a claim under the Fifth Amendment against Smith. In this claim, Shed alleges that after he was dismissed, he "wrote to Provost Dwayne Smith requesting that an evaluation that had been withheld be released," because he wanted to "use the evaluation in his grievance." 5th Am. Compl. ¶ 137. Smith refused to provide the evaluation and told Shed that his time to submit a grievance had expired. *Id.* ¶ 138. Shed claims that the period had not yet expired, and Smith therefore "truncated and attenuated" his time to appeal his dismissal from the school, violating his Fifth Amendment right to due process. *Id.* ¶ 139–40.

12

This claim fails for several reasons. First, the Fifth Amendment applies to the federal government, not Florida. *See Bartkus v. People of State of Ill.*, 359 U.S. 121, 124 (1959). Second, even if Shed's claim is construed as one under the Fourteenth Amendment Due Process Clause, he fails to state a claim. "[T]he mere failure to follow state procedures does not necessarily rise to the level of a violation of federal procedural due process rights." *Maddox v. Stephens*, 727 F.3d 1109, 1124 n.15 (11th Cir. 2013). Shed had the ability to seek judicial review of his dismissal in Florida court. *See Louis v. Univ. of S. Fla*, 181 So. 3d 578, 579 (Fla. 2d DCA 2016) (noting that USF's disciplinary sanctions are "reviewable by certiorari in the appropriate circuit court"). Where a plaintiff "failed to take advantage of available state remedies, he cannot show that he was denied procedural due process." *Doe v. Valencia Coll.*, 903 F.3d 1220, 1234 (11th Cir. 2018) (footnote omitted). Shed alleges only that he was denied the full appeal time that the school gave him; he does not allege an absence of other processes or that he took advantage of all available state processes. *See Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1294 (11th Cir 2007) (affirming dismissal of due process claim because "[o]nly when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation become actionable"). Count VII is therefore dismissed.

**H. Count VIII**

Defendants argue Count VIII fails because it does not specify which defendant it pertains to and because there is no civil remedy for mail tampering. The Court agrees. As already explained to Shed regarding his first and second amended complaints, a complaint that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against" is a shotgun pleading. *See Weiland v. Palm Beach Cnty. Sheriff's Off.,* 792 F.3d 1313, 1323 (11th Cir. 2015); Order on Am. Compl. (Doc. 18) at 2. This count does not specify which defendant allegedly tampered with the mail. Additionally, while this count—titled "Treble Damages"—appears to allege mail tampering, Shed identifies no law that was violated by the alleged tampering. Although federal law makes it a crime to tamper with the mail, it provides no private cause of action for mail tampering. *See Johnson v. Champions*, 990 F. Supp. 2d 1226, 1246 (S.D. Ala. 2014) ("federal courts have consistently refused to recognize civil claims for mail-tampering crimes"); *Durso v. Summer Brook Pres. Homeowners Ass'n*, 641 F. Supp. 2d 1256, 1268 (M.D. Fla. 2008) (Fawsett, C. J.) (same); *Whitney v. U.S. Postal Serv.*, 101 F.3d 686, 686 (2d Cir. 1996). Thus, Count VIII is dismissed.

I. **Motion to Strike**

Defendants also request that the Court strike Shed's request for punitive and liquidated damages. Because only part of Count III survives the motion to dismiss, the Court will address the motion to strike Shed's damages requests only under that count.

Rule 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). But "it is well settled among courts in this circuit that motions to strike are generally disfavored and will usually be denied unless it is clear the pleading sought to be stricken is insufficient as a matter of law." *Blanc v. Safetouch, Inc.*, No. 3:07-cv-1200, 2008 WL 4059786, at *1 (M.D. Fla. Aug. 27, 2008) (Morris, Mag. J.) (citing *Fabrica Italiana Lavorazione Materie Organiche S.A.S. v. Kaiser Aluminum & Chem. Corp.*, 684 F.2d 776 (11th Cir. 1982); *Thompson v. Kindred Nursing Ctrs. E., LLC*, 211 F. Supp. 2d 1345 (M.D. Fla. 2002) (Kovachevich, J.); *In re Sunbeam Secs. Litig.*, 89 F. Supp. 2d 1326 (S.D. Fla. 1999) (Middlebrooks, J.)); *see also Belmer v. Ezpawn Fla., Inc.*, 8:20-cv-1470, 2020 WL 7419663, at *1 (M.D. Fla. Sept. 28, 2020) (Covington, J.) (noting that a Court has "broad discretion" to rule on a motion to strike but emphasizing that such motions are "drastic" and are often considered "time wasters" (quotation omitted)). Thus, "a court will not exercise its discretion under the rule to strike a pleading unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or

15

otherwise prejudice a party." *Reyher v. Trans World Airlines, Inc.*, 881 F. Supp. 574, 576 (M.D. Fla. 1995) (Kovachevich, J.).

Here, Defendants' argument is that USF, as an arm of the state, is exempt from such damages. Mot. to Dismiss 5th Am. Compl. at 20. But the claim that survives dismissal is against Munkin in his individual capacity, not against USF. Thus, the Court will not strike the damages requests on this basis.

### J. Motion for Clarification

Finally, Shed moves for clarification regarding "whether or not attorneys are required to update their notices of appearance and/or Initial Disclosures to reflect whom the attorneys represent and in what capacity if there are changes to parties and/or the parties capacities in an Amended Complaint." Mot. for Clarification at 3. The Court may not provide legal advice, but Shed is free to consult the Middle District's resources for pro se litigants. *See Litigants Without Lawyers*, MIDDLE DISTRICT OF FLORIDA, https://www.flmd.uscourts.gov/litigants-without-lawyers (last visited July 10, 2023).

## IV. CONCLUSION

Counts I, II, and IV–VIII fail to state a claim, but Count III survives against Munkin in his individual capacity. Accordingly, the following is **ORDERED:**

1. Defendants' Motion to Dismiss (Doc. 67) is **GRANTED in part**.

2. Defendants' Motion to Strike (Doc. 67) is **DENIED.**

16

3. Shed's Motion for Clarification (Doc. 119) is **RESOLVED**.

4. Defendants must answer Count III by **July 31, 2023**.

**ORDERED** in Tampa, Florida, on July 10, 2023.

*[Signature]*
Kathryn Kimball Mizelle
United States District Judge